[No. B209486. Second Dist., Div. One. Jan. 12, 2010.]

ALEX JAIMEZ, Plaintiff and Appellant, v.
DAIOHS USA, INC., et al., Defendants and Respondents.

## COUNSEL

Law Office of Joseph Antonelli, Joseph Antonelli, Janelle C. Carney; Law Office of Kevin T. Barnes, Kevin T. Barnes and Gregg Lander for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, Tracey A. Kennedy, Jason W. Kearnaghan and Kevin M. Rivera for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—Appellant Alex Jaimez (Jaimez), a former route sales representative (RSR) for respondent DAIOHS USA, Inc., doing business as DAIOHS First Choice Services (First Choice), appeals the trial court's denial of his motion for class certification (the certification motion) and his subsequent motion for leave to amend complaint to substitute new class representatives (the motion to amend). In the complaint and certification motion, Jaimez alleged that First Choice applied a uniform policy and practice to its employees that (1) deliberately misclassified employees as "exempt" (to avoid paying overtime); (2) failed to provide employees with meal and rest break periods (and failed to pay the additional compensation required by California law); and (3) failed to provide legally compliant pay stubs.

On appeal, Jaimez contends the trial court abused its discretion in concluding that his claims were not typical, that common issues of law or fact did not predominate, and that Jaimez was not an adequate class representative; Jaimez asserts that the order should be reversed accordingly. We agree that the order should be reversed, albeit for the court's reliance on improper criteria in determining that predominant common issues of fact and law were absent. We therefore reverse the order denying the certification motion except as to the finding that Jaimez is not an adequate class representative, which we affirm. The trial court is directed to certify the subclasses as defined in Jaimez's motion upon the court's approval of a new class representative. The denial of the motion to amend is reversed with directions to file the first amended complaint nunc pro tunc.

## BACKGROUND[1]

First Choice sells and services a comprehensive range of refreshment and other products to business customers, including a line of gourmet coffees, brewing-related equipment, bottled water, water coolers, and vending machines. The company's California operations are headquartered in Downey, California. First Choice maintains six other locations in the state: Fresno, Oakland, Ontario, Sacramento, San Diego, and Santa Clara. First Choice believes Industrial Welfare Commission (IWC) wage order No. 7-2001 for the mercantile industry applies to its business and RSR's.[2]

RSR's spend almost their entire workday on the road or at customers' places of business. The only time spent onsite at First Choice is at the beginning and end of each shift. In the morning, RSR's clock in, review the daily customer lists, verify the products to be loaded onto the delivery vehicle for that day, and visually inspect the delivery vehicle. In the evening, RSR's generate an end-of-the-day report and clock out.

Prior to 2003, RSR's received a base salary, plus commissions.[3] First Choice states that in the 2003–2004 timeframe, it "decided to take a more conservative compliance approach regarding the classification of its employees. As such, First Choice re-classified certain exempt position[s], including the vast majority of RSR positions, to non-exempt positions. . . . In this non-exempt classification, RSRs received a base hourly wage rate and overtime on such for work in excess of eight (8) hours per workday or forty (40) hours per workweek. As of October 31, 2007, all RSRs were converted to non-exempt positions."

*The Pleadings*

On June 14, 2007, Alex Jaimez filed a putative class action against his employer, DAIOHS USA, Inc., and DAIOHS First Choice, seeking the

---

[1] The facts are drawn from the complaint and the parties' submissions in connection with the certification motion.

[2] Jaimez maintains that IWC wage order No. 9-2001, governing the transportation industry, applies here, but notes the dispute is "a legal issue amenable to class treatment" and, in any event, is immaterial for purposes of this appeal. We agree.

[3] First Choice explains that it "expected RSRs to sell products and/or services on every customer call. For instance, upon delivery of bottled water and/or servicing of water cooler(s), a Route Bottled Water Sales Representative was expected to sell an increased volume of bottled water and/or water coolers and to 'up-sell' such products as water cups and cupholders. Likewise, an Office Coffee Sales Representative was expected to sell such items as coffee, accompaniments (*i.e.,* creamer or sweetener), and cups, and to 'up-sell' such items as the Flavia Gourmet Coffee Station and related productions (*i.e.,* gourmet coffee packets). This commission-based compensation system incentivized RSRs to increase product sales to the existing customer base."

recovery of unpaid wages. The complaint alleged that First Choice improperly classified the putative class (consisting of current and former employees) as "commissioned exempt" and/or "outside salespersons."

The complaint proposed five classes:[4]

—class I (overtime class) based upon the failure to pay overtime to the class;

—class II (meal break class) based upon the failure to permit or authorize meal breaks and the failure to pay one hour of wages for each meal break violation;

—class III (rest break class) based upon the failure to permit or authorize rest breaks and the failure to pay one hour of wages for each rest break violation;

—class IV (vacation pay class) based upon the failure to pay all earned vacation pay; and

—class V (pay stub class) based upon the failure to provide pay stubs which comply with California law.

The complaint listed the predominant common questions of law and fact as including, among others, whether First Choice (1) violated California's overtime requirement by requiring overtime work, but not paying the class for such work; (2) improperly retained money owed to the class; (3) engaged in unfair business practices; (4) failed to provide meal periods to the class; (5) failed to authorize and permit the class to take rest periods; and (6) owed the class applicable penalties under California law. The complaint specifically alleged that First Choice misclassified RSR's as exempt employees, considering itself exempt from meal and rest break requirements, denied class members meal and rest breaks, and failed to comply with the record-keeping requirements of Labor Code section 226, subdivision (a). The complaint also asserted that First Choice consistently administered a uniform corporate policy that violated California law with respect to overtime and meal and rest break requirements.

The complaint asserted seven causes of action against First Choice: (1) recovery of unpaid wages and penalties; (2) unfair business practices;

---

[4] The complaint identified the class period for the overtime class as "within the last four (4) years," that is, from June 14, 2003, to June 14, 2007. The class periods for the remaining classes are longer, that is, "from four (4) years before the filing of the original complaint to the date of judgment."

(3) conversion[5]; (4) violation of Labor Code section 200 et seq.; (5) failure to allow all meal breaks pursuant to Labor Code section 226.7; (6) failure to allow all rest breaks pursuant to Labor Code section 226.7; and (7) violation of Labor Code section 226.

On July 30, 2007, First Choice filed an answer to the complaint.

### The Certification Motion

On April 8, 2008, Jaimez filed a motion for class certification. The motion sought certification of the above classes (minus the vacation pay class).[6] The motion sought a determination that Jaimez was a suitable class representative and sought appointment of counsel Joseph Antonelli and Janelle Carney of the Law Office of Joseph Antonelli and Kevin Barnes and Gregg Lander of the Law Offices of Kevin T. Barnes as class counsel. The motion also asserted that certification was appropriate because First Choice subjected the class to "uniform policies and practices including failure to properly compensate its RSR employees, by failing to pay proper straight time, premium overtime, double time, missed meal & rest period compensation, failure to provided RSRs with compliant pay stubs and waiting time penalties."

### Class Counsel

Attorney Joseph Antonelli submitted a declaration in support of the certification motion (Antonelli Declaration). Antonelli stated that he and cocounsel Kevin Barnes have significant experience in class action litigation.[7] Antonelli graduated from Loyola Law School in 1988 and has been a member of the State Bar since December 1988. He listed a sample of 27 class actions that were certified in which he was appointed lead or co-lead counsel. Antonelli averred that he was unaware of any legal differences in the representatives' status versus the rest of the classes or any unique factual issues pertaining to the representatives that must be litigated. He stated his belief that the class action mechanism was superior to litigating up to 247 individual actions and indicated his belief that Jaimez individually had been and would be a proper class representative.

Antonelli estimated that the 247 putative class members were sent a " 'neutral notice' " of the litigation, affording them an opportunity to object to

---

[5] The parties executed a joint stipulation dismissing the conversion cause of action on February 20, 2008.

[6] Pursuant to the parties' stipulation, the trial court dismissed the vacation pay class and claims on February 4, 2008.

[7] It does not appear that Jaimez submitted a declaration from Attorney Kevin Barnes with his class certification motion.

the release of their identifying information. Thirty-nine individuals objected to disclosure of the information. Antonelli and cocounsel Kevin Barnes's office represent the putative class members and stated they were prepared to file individual lawsuits on behalf of putative class members if the certification motion was denied.

Antonelli further anticipated six likely areas of dispute in the liability phase that would probably be decided by motions for summary judgment or summary adjudication, notably, whether RSR's:

—were misclassified as exempt employees;

—were permitted to take meal breaks within the first five or six hours of their shifts;

—voluntarily waived their right to a second 30-minute meal period when working 10 or more hours per day;

—were permitted to take 10-minute rest breaks for every four hours worked;

—were paid one hour of pay for any meal and rest break violations; and

—received legally compliant pay stubs.

Antonelli offered a case management plan should the case proceed to trial, addressing the number of class members who would be required to testify at trial, a proposal to use survey evidence and representative sampling in the case-in-chief, and his view of the availability of evidence regarding damages.

*RSR Declarations*

Jaimez submitted nine declarations of former First Choice RSR's, including his own, in support of his motion for class certification.

*Jaimez's Declaration*

Jaimez stated that First Choice hired him as a route trainee in June 2001. Jaimez worked for First Choice as an RSR during the class period. As class representative, Jaimez has helped draft discovery, responded to discovery and provided two days of deposition testimony. In addition, Jaimez attended the sole mediation session. Jaimez addressed his felony conviction and incarceration for petty theft/robbery, which he failed to list on his job application.

Jaimez's employment with First Choice was terminated after he revealed this information during his deposition.

*Putative Class Members' Declarations*

The declarants stated, among other things, the following:

—RSR's performed the same duties, including (1) making daily deliveries (of coffee, soda, water and/or other office supplies) to preset customers; (2) counting all items being loaded and delivered as well as returned to the facility; and (3) driving a company delivery truck alone, without any other subordinate employees present.

—First Choice RSR's were subject to the same uniform pay and meal break policies as set forth in First Choice's employee handbook.

—Until December 31, 2004, First Choice had a policy of not paying RSR's overtime pay, although RSR's worked overtime hours. RSR's received no overtime during this period.

—After First Choice reclassified RSR's as nonexempt, hourly employees, RSR's still did not receive overtime pay for working overtime hours.

—First Choice required RSR's to timely complete their routes, although the company assigned the RSR's large routes with too many stops. As a result, RSR's often worked more than eight hours per day without taking all required uninterrupted meal and/or rest breaks. The RSR delivery schedule made it extremely difficult to timely complete the deliveries and take all required meal and rest breaks.

—After First Choice reclassified the RSR's as hourly employees, RSR's were told to get their routes done within eight hours, continuing to make it difficult for RSR's to take all required uninterrupted meal and rest breaks.

—First Choice failed to inform RSR's that they were entitled to a second uninterrupted meal period when they worked more than 10 hours in a day. RSR's never received compensation for missed meal or rest breaks.

—Before 2006, First Choice had a policy and practice of deducting 30 minutes per shift for each RSR's meal break.

—Beginning in 2006, First Choice required RSR's to sign a manifest indicating that they took a meal break, regardless of whether they actually

took the break. In violation of Labor Code § 206.5, First Choice forced RSR's to sign the manifest in order to get paid. Accordingly, First Choice's manifests are inaccurate.

In its opposition to the certification motion, First Choice submitted declarations from 25 putative class members, all current employees of the company. First Choice's declarants stated they are allowed and encouraged to take meal breaks, that they have the time to take them, and that they actually take their meal breaks when they want. In addition, several RSR's stated it is their normal practice to take their meal breaks during every shift, no matter how busy they are. Other RSR's stated they sometimes elect to voluntarily forgo taking their meal periods in order to finish their shift sooner, but that neither First Choice management nor their delivery routes ever prevented them from taking their meal breaks should they choose to take them.

As for their understanding of the meal break policy and whether they had the opportunity to take the breaks, some RSR's learned about the 30-minute meal break policy from First Choice supervisors. Jaimez testified in his deposition that the policy was verbally communicated to him by his supervisor. Other RSR's learned of the meal break policy when they reviewed the employee handbook with their supervisor at the time of hire.

First Choice's declarants also addressed rest breaks: These RSR's stated their understanding that they can take their rest breaks when they wish and that they do in fact take their rest breaks. Many RSR's stated that they sometimes elected to voluntarily forgo taking their rest breaks in order to finish their shifts sooner, but that neither First Choice management nor their delivery routes ever prevented them from taking rest breaks if they chose to take them. Some RSR's learned of the rest break policy when they reviewed the employee handbook with their supervisor at the start of their employment. Others learned of the policy at driver meetings. Several RSR's stated that First Choice supervisors and management reminded them to take their rest breaks.

A number of First Choice's declarants stated that the information on their pay stubs has always been accurate, showing the number of regular hours, overtime hours, and total hours worked for every pay period in which they worked. Those declarants who have been classified as hourly employees since the start of their employment with First Choice stated that they have always received overtime pay whenever they have worked overtime hours, and that their pay stubs accurately reflected this fact.

*The Trial Court's Order*

The trial court denied the certification motion on May 22, 2008. The trial court acknowledged Jaimez's four putative classes: (1) overtime; (2) meal

periods; (3) rest periods; and (4) itemized wage statements and found the putative class members sufficiently numerous to satisfy the numerosity requirement. The trial court further found the proposed classes were ascertainable and thus satisfied the ascertainability requirement. Although the court's written order did not reflect this finding, the trial court stated at the hearing that it "believe[d] counsel would be adequate based on what they have represented to represent the class."

The trial court found Jaimez failed, however, to establish a "community of interest" among the putative class members in that (1) Jaimez's claims were not representative of the proposed class, as demonstrated by First Choice's 25 declarations; (2) Jaimez was not an adequate class representative because he lied on his First Choice employment application about his felony conviction and incarceration, he admitted his view that it is acceptable to lie in order to obtain or maintain employment, questions surrounded his purported falsification of time records and other documents (notably, manifests), and his declaration may be contradicted by his deposition testimony; (3) common questions of law and fact did not predominate because First Choice's evidence demonstrated a strong indication of conflicting testimony at trial, which therefore precluded a finding of common questions of fact; and (4) a class action was not the superior method for adjudicating the claims in the complaint given the lack of commonality and typicality and thus the corresponding need for individualized inquiry.

During the hearing, the trial court stated it "[found] some difficulty in pulling together a class that plaintiff would be typical of representing," citing the First Choice declarations, because "some of them state they got meal breaks, they got rest breaks, they got proper pay stubs. So the members of the class don't hang together for typicality." The trial court cited Jaimez's credibility issues, but acknowledged there "could be somebody else out there who's got a more sterling record than [Jaimez's] been portrayed as."

Addressing the common questions of law and fact, the court stated First Choice's declarations "give a strong indication that there could be conflicting testimony regarding whether these employees have common factual issues to be presented at trial." Also, "there would be potentially conflicting issues of law regarding application of the Labor Code to different class members."

On the superiority factor, the trial court stated: "We, again, have the difficulty of various individuals who would fall into various categories regarding the four named classes that—classes of individuals who did or didn't receive proper pay or provision of breaks, mealtime, on their pay stubs. . . . And the . . . individuality in this type of circumstance really anticipates superiority of these types of claims as has been presented."

The trial court denied the certification motion *without prejudice*.

On June 26, 2008, Jaimez filed a motion for leave to file a first amended complaint (FAC) (the motion to amend). The proposed FAC named two new class representatives—Anthony Torre and Tommy Brackens. The proposed FAC clarified that Jaimez would only pursue his individual claims and would no longer serve as a class representative. In addition, the proposed FAC omitted the conversion claim and the vacation pay class and substituted the rest break class for a waiting time penalty class. First Choice did not oppose the motion to amend. The trial court denied the motion on June 30, 2008.

On July 14, 2008, Jaimez filed a notice of appeal from both orders.

## DISCUSSION

### The Certification Motion

1. *Standard of Review*

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug Stores*).) We do not apply this deferential standard of review if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: "[A] trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . .' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*); accord, *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 575–576 [67 Cal.Rptr.3d 468, 169 P.3d 889]; *Sav-On Drug Stores, supra,* 34 Cal.4th at pp. 326–327; see *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828–829 [97 Cal.Rptr.2d 226] ["[i]f the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, 'an appellate court is required to reverse . . . "even though there may be substantial evidence to support the court's order" ' "].) The reviewing court "must examine the trial court's reasons for denying class certification." (*Linder, supra,* 23 Cal.4th at p. 436.) When reviewing an order denying class certification, appellate courts "consider only the reasons cited by the trial court for the denial, and ignore other

reasons that might support denial." (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1205 [76 Cal.Rptr.3d 804].)

 "To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members." (*Linder, supra*, 23 Cal.4th at p. 435, citing *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] (*Richmond*) and *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809 [94 Cal.Rptr. 796, 484 P.2d 964]; see *Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326.) "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Linder, supra*, 23 Cal.4th at p. 435.)

"A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326.) "The relevant comparison lies between the costs and benefits of adjudicating plaintiffs' claims in a class action and the costs and benefits of proceeding by numerous separate actions . . . ." (*Id.* at p. 339, fn. 10.)

 "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326, quoting *Linder, supra*, 23 Cal.4th at pp. 439–440.) By the same token, "the trial court must evaluate whether the theory of recovery advanced by the plaintiff is likely to prove amenable to class treatment . . . ."[8] (*Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524, 1531 [87 Cal.Rptr.3d 518] (*Ghazaryan*).) California courts consider "pattern and practice evidence, statistical evidence, sampling evidence, expert testimony, and other indicators of a defendant's centralized practices in order to evaluate whether common behavior towards similarly situated plaintiffs makes class certification appropriate." (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 333.) "Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing." (*Linder, supra*, 23 Cal.4th at p. 435.)

---

[8] " 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' [Citations.]" (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 327.)

### 2. *The Correct Criteria for Analyzing Jaimez's Motion*

As stated, the California Supreme Court has set forth the "proper legal criterion" for determining whether a class should be certified as "whether . . . plaintiffs . . . established 'by a preponderance of the evidence that the class action proceeding is superior to alternate means for a fair and efficient adjudication of the litigation.' [Citation.]" (*Sav-On Drug Stores, supra,* 34 Cal.4th at p. 332.) "[T]he established legal standard for commonality . . . is comparative." (*Id.* at p. 339.) Specifically, "[t]he relevant comparison lies between the costs and benefits of adjudicating plaintiffs'claims in a class action and the costs and benefits of proceeding by numerous separate actions—*not* between the complexity of a class suit that must accommodate some individualized inquiries and the absence of any remedial proceeding whatsoever. [Citations.]" (*Id.* at p. 339, fn. 10.)

The trial court misapplied the criteria, focusing on the potential conflicting issues of fact or law on an individual basis, rather than evaluating "whether the *theory of recovery* advanced by the plaintiff is likely to prove amenable to class treatment." (*Ghazaryan, supra,* 169 Cal.App.4th at p. 1531, italics added; see also *Sav-On Drug Stores, supra,* 34 Cal.4th at p. 327 ["[I]n determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.]"].) "Although individual testimony may be relevant to determine whether these policies unduly restrict the . . . drivers as a whole . . . , the legal question to be resolved is not an individual one. To the contrary, the common legal question remains the overall impact of [respondent's] policies on its drivers . . . ." (*Ghazaryan, supra,* 169 Cal.App.4th at p. 1536; see also *Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1329 [13 Cal.Rptr.3d 725] [reversing trial court's order sustaining defendant's demurrer to class allegations in complaint as premature, court observed that plaintiff had alleged "institutional practices by CLS that affected all of the members of the potential class in the same manner, and it appears from the complaint that all liability issues can be determined on a class-wide basis."].)

Plaintiff's "theory of recovery" involves uniform policies applicable to the RSR's that are more amenable to class treatment. Predominant questions of fact and law include whether First Choice misclassified RSR's as exempt employees, thereby misapplying meal and rest break requirements, as well as the attendant record-keeping duties. Plaintiff alleges First Choice consistently administered a uniform corporate policy that violated overtime and meal and rest break requirements. Even when properly classified, RSR's were still subject to uniform policies and practices, notably, failure to properly compensate them, failure to pay them proper straight time, premium overtime, double

time, missed meal and rest period compensation, and failure to provide them with compliant pay stubs and waiting time penalties.

Additionally, under plaintiff's theory of recovery, uniform corporate practices applicable to RSR's (even once they were reclassified as nonexempt) are more amenable to class treatment. Plaintiff submitted evidence of the following practices and policies: that RSR's performed the same duties; regardless of the exempt or nonexempt status of RSR's, First Choice failed to properly pay overtime compensation, although RSR's earned it; First Choice created routes and delivery schedules which it pressured RSR's to complete in eight hours; rather than promoting meal and rest breaks, this action had the opposite effect, despite supervisors' statements or encouragement that RSR's should take their breaks; and First Choice failed to compensate RSR's for missed, late, or interrupted meal and rest breaks. Under the *Sav-On Drug Stores* standard, plaintiff's theory of recovery, focused on uniform policies and practices applicable to RSR's within the relevant time period, as compared to individual claims, was and is more amenable to class treatment than individual disposition.[9]

3. *Common Questions of Law and Fact Predominate over Individuals' Issues.*

*The First Choice Declarations Support Certification Based on Common Facts.*

First Choice submitted 25 declarations to support its contention that Jaimez's claims actually "require extensive factual inquiry into each RSR's practices and daily activities." The trial court focused on the *merits* of the declarations, evaluating the contradictions in the parties' responses to the company's uniform policies and practices, not the policies and practices themselves. The determination of whether to certify a class does not contemplate an evaluation of the merits. Our concern is whether the trial court applied the correct legal criteria when reviewing the First Choice declarations: whether the declarations constitute substantial evidence to counter First Choice's alleged Labor Code and wage order violations and whether the claims of such violations are more amenable to class rather than individual treatment. In fact, had the trial court focused on the correct criteria, it would have necessarily found the First Choice declarations, while identifying individual effects of policies and practices that may well call for individual damages determinations, nevertheless confirm the predominance of common legal and factual issues that make this case more amenable to class treatment. For example:

---

[9] Predominant common legal and factual issues applicable to each putative subclass are addressed individually.

—Eight of the First Choice declarations admit that RSR's regularly "forego" meal breaks and one states that he never takes a meal break; and

—The First Choice declarations also fail to state that the RSR's were compensated with an additional hour of pay, as required by California law, when the RSR's failed to follow their "normal" practice and/or did not receive a 30-minute uninterrupted meal period.

█ The First Choice declarations actually demonstrate there are numerous predominant common factual issues. The fact that individual RSR's may have different *damages* does not require denial of the class certification motion. Furthermore, declarations from a small percentage of objectors do not bar class certification. In sum, the trial court applied improper criteria in evaluating the merits of the First Choice declarants' statements rather than considering whether they rebutted plaintiff's substantial evidence that predominant factual issues (if not legal, too) make this case more amenable to class treatment than to myriad individual adjudications (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 743 [9 Cal.Rptr.3d 544] (*Bell*); *Richmond, supra,* 29 Cal.3d at p. 475.)

### 4. Common Legal and Factual Issues Predominate the Alleged Misclassification of RSR's.

The trial court erred in finding that an individual inquiry is required to determine when the RSR's were reclassified. The complaint proposed an overtime class consisting of all RSR's who worked overtime hours but received no overtime pay because First Choice misclassified these employees as either salaried or commissioned (or both) employees who were exempt from the overtime requirements. Until December 31, 2004, First Choice's policy was not to pay RSR's for any overtime hours worked. First Choice admits it did not complete its reclassification of the RSR's until October 31, 2007.

█ The predominant legal issue (whether First Choice misclassified its RSR's as exempt) and the predominant factual issue (First Choice's uniform practice regarding RSR classification) are amenable to class treatment. Notably, the pertinent inquiry is whether a particular RSR was misclassified at some point during the class period. If so, he is a member of the class and entitled to a legal determination as to whether First Choice misclassified him. And, as noted, the fact that misclassified RSR's have different damages does not preclude class certification. (*Sav-On Drug Stores, supra,* 34 Cal.4th at

pp. 329–330 ["A reasonable court, even allowing for individualized damage determinations, could conclude that, to the extent plaintiffs are able to demonstrate . . . that misclassification was the rule rather than the exception, a class action would be the most efficient means of resolving class members' overtime claims."].) Rejecting Sav-On's argument that class certification would result in numerous minitrials, the Supreme Court explained: "[E]ach class member's claim to unpaid overtime depends on whether he or she worked for defendant during the relevant period in a position that was misclassified either deliberately (on a class basis) or circumstantially (again, as a consequence of defendant's class-wide policies and practices). That calculation of individual damages may at some point be required does not foreclose the possibility of taking common evidence on the misclassification questions." (*Id.* at p. 332.) In sum, "individualized proof of damages is not per se an obstacle to class treatment . . . ." (*Id.* at p. 335.) It is no bar to certification "that individual class members may ultimately need to itemize their damages." (*Id.* at p. 334.)[10]

5. *Predominant Common Legal and Factual Issues Regarding the Overtime Claims.*

The common legal issues predominating Jaimez's overtime claim stem in part from the misclassification alleged in the first cause of action and include whether First Choice violated Labor Code sections 510, subdivision (a) and 1194 by requiring RSR's to work these hours without overtime pay and misclassifying its RSR's as exempt (to preclude them from receiving overtime pay). Similarly, the predominant common factual issues include (1) whether First Choice had a uniform practice of misclassifying RSR's as exempt; and (2) whether First Choice had a uniform policy of requiring RSR's to work overtime, but failing to pay them for their overtime hours. The absence of timesheets (during the time when First Choice misclassified its RSR's as exempt) does not make it "impossible" to ascertain overtime hours worked by particular employees. In fact, as the class declarations demonstrate, RSR's routinely worked overtime, and it is a straightforward matter to determine the relevant numbers of hours. The class RSR's performed the same duties every day, including making daily deliveries to preset customers and counting all items that were loaded and delivered, as well as those items returned to the First Choice facility. The RSR's also stated that they often worked more than eight hours per day without taking all required uninterrupted meal and/or rest breaks. RSR's who made such deliveries on a daily basis could attest to the typical amount of overtime they worked each

---

[10] First Choice's assertion that Brackens was never reclassified does not compel a contrary conclusion. Brackens states he was misclassified as exempt and received no overtime wages for overtime work. That Brackens was never reclassified as nonexempt simply indicates that his damages, upon proof of liability, may be greater than those of other RSR's.

day, even in the absence of time records. Variations in individual RSR overtime hours go to damages and do not preclude class certification. The possible use of survey evidence or testimony from a random and representative sampling of class members can certainly be explored to facilitate the necessary calculations.

6. *Predominant Common Legal and Factual Issues Regarding the Meal and Rest Break Claims*

First Choice argues that its meal break policy complies with Labor Code sections 512 and 226.7. The merits of that assertion do not affect the court's role in determining class certification. (See *Linder, supra*, 23 Cal.4th at pp. 439–440 [the certification question "does not ask whether an action is legally or factually meritorious."].) First Choice relies principally on federal district court decisions, notably, *Brown v. Federal Express Corp.* (C.D.Cal. 2008) 249 F.R.D. 580, and *White v. Starbucks Corp.* (N.D.Cal. 2007) 497 F.Supp.2d 1080, 1089, which found that employers need only "provide" meal breaks and need not ensure the employee actually takes the meal break. The law on this issue is unsettled. In *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] (*Cicairos*), in contrast with *Brown* and *White*, the Court of Appeal held that an employer's obligation to provide employees with an adequate meal period was not satisfied "by assuming that the meal periods were taken, because employers have 'an affirmative obligation to ensure that workers are actually relieved of all duty.' " (*Id.* at p. 962.) We note that the California Supreme Court has granted review in two cases that conflict with *Cicairos*. (See *Brinker Restaurant Corp. v. Superior Court* (2008) 165 Cal.App.4th 25, 31 [80 Cal.Rptr.3d 781] [holding that employers "need only provide [meal breaks] and not ensure they are taken."], review granted Oct. 22, 2008, S166350; *Brinkley v. Public Storage, Inc.* (2008) 167 Cal.App.4th 1278, 1290 [84 Cal.Rptr.3d 873] [holding that "California law does not require an employer to ensure that employees take rest periods. An employer need only make rest periods available."], review granted Jan. 14, 2009, S168806.) Naturally, we cannot and need not try to predict the outcome of the Supreme Court's review, as we are not, at this stage, charged with adjudicating the legal or factual merits of Jaimez's causes of action. (*Linder, supra*, 23 Cal.4th at pp. 439–440.)

The First Choice declarations do not constitute substantial evidence that individual inquiries predominate the meal breaks claim. First, as noted, the existence of a small number of objectors is not grounds for denying class

certification. (*Bell, supra,* 115 Cal.App.4th at p. 743; *Richmond, supra,* 29 Cal.3d at p. 475.) In addition, on their face, the declarations fail to establish that any of the meal breaks were (1) uninterrupted, (2) for 30 continuous minutes, or (3) provided within the first five hours of a shift. First Choice's practices are the predominant common factual issues on the meal and rest break claims.

With respect to First Choice's argument that individual factual issues predominate because RSR's falsified their time records when they signed a manifest indicating that they took the required meal and rest breaks, the common factual issue of whether there was a practice that required RSR's to sign a manifest indicating that they took a meal break in order to receive their paychecks predominates over individual claims. Indeed, First Choice's policy and practice before 2006 of deducting 30 minutes per shift for each RSR, regardless of whether the RSR took a meal break, raises common legal *and* factual issues. In any event, we decline First Choice's invitation to consider the merits of the issue; that simply is not our obligation in reviewing the denial of a class certification motion.

As for the predominant common factual issues concerning rest breaks,[11] Jaimez and his declarants allege that First Choice had a policy of failing to permit or authorize RSR's to take rest breaks, in violation of Labor Code section 226.7, subdivision (b). When it did not provide the rest break, moreover, First Choice failed to pay one hour of wages (as required) for each violation. Jaimez presented evidence of these predominant common factual issues:

—RSR's often were not able to take their required rest breaks;

—The delivery schedules made it extremely difficult for RSR's to timely complete the deliveries and take all required rest breaks;

—After First Choice reclassified the RSR's as hourly employees, RSR's were told to complete their deliveries within eight hours, making it even more difficult for RSR's to take all required rest breaks; and

—RSR's never received compensation for missed rest breaks.

---

[11] Although it appears Jaimez was prepared to forgo this claim in the proposed FAC, to the extent it remains in the complaint, predominant common legal and factual issues make it amenable to class treatment, as well.

■ Twenty-two of the 25 First Choice declarations stated that RSR's routinely skipped their rest breaks, but the declarants did not indicate they always received every rest break to which they were entitled. There may well be, as First Choice argues, reasons why RSR's chose not to take a rest break. Nevertheless, for purposes of the class certification motion, the predominant common factual issue is whether RSR's missed meal breaks because First Choice's policy and practice of designating delivery schedules and routes precluded RSR's from timely completing their routes and taking the legally required rest breaks. As one court has observed: "This issue is subject to common proof, including evidence of schedules, a sample of the actual route times, and driver testimony. This issue predominates over individualized inquiries required because 'determinations about hours worked are routine in class actions involving alleged denials of overtime pay and meal/rest periods.'" (*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.* (S.D.Cal., Feb. 2, 2009, No. 05cv1199-IEG-CAB) 2009 WL 249888, p. *6, citation & fn. omitted.)

It is evident that common legal and factual issues predominate over any individual issues with respect to the meal and rest break claims. We thus conclude the trial court did not apply the applicable criteria here.

7. *Predominant Common Legal and Factual Issues Regarding the Pay Stub Claims*

Pursuant to Labor Code section 226, subdivision (a), employers must provide employees with "an accurate itemized statement in writing" showing, inter alia, "total hours worked" and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." (Lab. Code, § 226, subd. (a).) "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [section 226, subdivision (a)] is entitled to" specified damages. (Lab. Code, § 226, subd. (e).)

Jaimez contends the First Choice pay stubs violate Labor Code section 226, subdivision (a), because they (1) identify "current earnings" rather than "gross wages"; (2) list "total hours paid" so that RSR's cannot determine if all hours worked are being paid; (3) fail to identify the commission percentage or the draw or piece-rate formula (prior to the reclassification); and (4) fail to identify the hourly rates, commission rate or piece rates in effect (prior to the reclassification). (Lab. Code, § 226, subd. (a).) As noted, we do not reach the merits of such claims on an appeal from a class certification motion.

■ First Choice argues that individual issues predominate because the RSR's must establish "actual injury" arising from the receipt of inaccurate pay stubs. Based on the plain language of Labor Code section 226, subdivision (e), an employee has a statutory right to an accurate pay stub. Two recent federal court cases addressed the same issue and set a fairly minimal standard for the requisite injury. In *Wang v. Chinese Daily News, Inc.* (C.D.Cal. 2006) 435 F.Supp.2d 1042 (*Wang*), on cross-motions for summary judgment, the defendants argued that the plaintiffs could not establish the requisite injury. The employer's wage statements consistently reflected 86.66 hours worked (regardless of the number of hours actually worked) and omitted the hourly wage paid. The court found an employee suffered injury "because (1) the employee might not be paid overtime to which she was entitled and (2) the absence of an hourly rate prevents an employee from challenging the overtime rate paid by [the employer]." (*Id.* at p. 1050.) The court explained further: "Additionally, this lawsuit, and the difficulty and expense Plaintiffs have encountered in attempting to reconstruct time and pay records, is further evidence of the injury suffered as a result of [the employer's] wage statements. Plaintiffs' ability to calculate unpaid and miscalculated overtime is complicated by the missing information required by Section 226(a). The purpose of the requirement is that employees need not engage in the discovery and mathematical computations to analyze the very information that California law requires." (*Id.* at pp. 1050–1051.) The *Wang* court set the bar rather low.

Similarly, in *Elliot v. Spherion Pacific Work, LLC* (C.D.Cal. 2008) 572 F.Supp.2d 1169, again on cross-motions for summary judgment, the court addressed the same issue of the meaning of the term "suffering injury." There, the court stated "the statute clearly requires that an employee is not eligible to recover for violations of section 226(a) *unless* he or she demonstrates some injury from the employer's violation." (*Id.* at p. 1181.) The court listed the range of injuries in the cases the plaintiff had cited to show that no injury was necessary: "These injuries included the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked." (*Ibid.*) While there must be some injury in order to recover damages, a very modest showing will suffice.

As in *Wang, supra*, 435 F.Supp.2d at page 1050 "this lawsuit, and the difficulty and expense [Jaimez has] encountered in attempting to reconstruct time and pay records," may well be "further evidence of the injury" he has suffered. First Choice is correct that, at this point, there does not appear to be

any evidence in the record of Jaimez's injury resulting from inaccurate pay stubs. The fact that individualized proof of damages may ultimately be necessary does not mean, however, that Jaimez's theory of recovery is not amenable to class treatment. A common legal issue predominates the claim, and it makes no sense to resolve it in a piecemeal fashion.

### 8. *Jaimez's Claims Are Typical of the Class.*

While First Choice argues that Jaimez's claims are not typical, First Choice nevertheless admits that he has submitted nine "nearly identical" declarations in support of his motion. This fact alone significantly bolsters a conclusion that his claims are typical of the class.

As for First Choice's efforts to cast doubt on the accuracy of several declarations, implying that the declarants never read them, the declarants have explained that they read and approved their declarations. At his deposition, Mr. Torre testified that he had an opportunity to review his declaration before it was signed. Mr. Torre also instructed counsel to execute his declaration because he was going out of town and was unable to print his declaration. Mr. Morales also confirmed that he reviewed his declaration, made revisions to it, and, after confirming that those revisions were made, instructed counsel to insert his electronic signature because he was working on the day that it was filed with the court and was thus unable to sign it. Similarly, Mr. Brackens confirmed that he reviewed and revised his declaration and, after confirming that his revisions were incorporated, he instructed counsel to insert his electronic signature because he was not able to receive and execute the revised declaration prior to the filing deadline. Absent evidence that the declarants repudiate the content of their declarations, we are not inclined at the class certification stage to disregard them, as First Choice requests.

In any event, Mr. Jaimez's inconsistent deposition and declaration, discussed below, call for a new class representative. Whether that representative should be one of the individuals mentioned in the opening brief or someone else altogether, we leave to the trial court.

### 9. *Jaimez Is Not an Adequate Class Representative.*

First Choice argues that Jaimez is not an adequate class representative because he has credibility issues. We agree, as does Jaimez, given that he has offered two potential alternative class representatives (Torre and Brackens).

Our remand to the trial court will include the condition that a suitable class representative be named and then approved by the court before the class may be certified.

10. *Class Treatment Is the Superior Method of Adjudication.*

In light of the numerous common issues of fact and law that predominate in this lawsuit, we conclude that proceeding by way of class action is the superior method of adjudication. Doing so would further judicial economy by avoiding repetitious suits, would unify what would otherwise be a series of small claims so as to enhance the class members' access to redress, and would put to rest any current employee concerns about retaliation. (See *Bibo v. Federal Express, Inc.* (N.D.Cal., Apr. 21, 2009, No. C 07-2505 TEH) 2009 WL 1068880, p. *9.)

## The Motion to Amend

The trial court denied the class certification motion without prejudice and invited the class to present a new class representative. The court stated: "I think you just got the wrong plaintiff holding the umbrella in this instance for these individuals working for this company." Jaimez filed a motion for leave to file a FAC as a prelude to bringing a new or renewed motion for class certification. First Choice admitted that it did not oppose the motion because "the standard for granting leave to amend is so low" and because of "the court's prior direction during the class hearing, you suggested to them that they do obtain a new class representative." While not bound by its comments at the hearing on the certification motion, the trial court did not explain its turnaround either. As leave to amend is routinely granted and because the class presented two new class representatives (in direct response to the trial court's concern regarding the adequacy of Jaimez as a class representative), we conclude the trial court abused its discretion in denying leave to amend. (*Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530 [343 P.2d 62] ["If the motion to amend is timely made and the granting of the motion will not prejudice the opposing party, it is error to refuse permission to amend and where the refusal also results in a party being deprived of the right to assert a meritorious cause of action or a meritorious defense, it is not only error but an abuse of discretion."]; *Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163 [57 Cal.Rptr.3d 755].)

Accordingly, we reverse.

## DISPOSITION

The order denying the certification motion is reversed except as to the finding that Jaimez is not an adequate class representative, which we affirm. The trial court is directed to certify the subclasses as defined in Jaimez's motion upon the court's approval of a new class representative. The denial of the motion for leave to file the first amended complaint is reversed with directions to file the first amended complaint upon the appointment of a new class representative. In all other respects, the orders are affirmed. Jaimez is to recover his costs on appeal.

Mallano, P. J., and Chaney, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 12, 2010, S180841.