Filed 10/23/14; pub. order 11/13/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re<br><br>WALGREEN COMPANY OVERTIME CASES | B230191<br><br>(Judicial Council Coordination Proceeding No. JCCP 4511) |

APPEAL from an order of the Superior Court of Los Angeles County; Carl J. West, Judge. Order affirmed.

Krutcik & Georggin, James A. Krutcik, A. Nicholas Georggin, Joo Hee Kershner, Carmine J. Pearl; Westrup Klick, R. Duane Westrup and Phillip R. Poliner for Plaintiffs and Appellants.

Seyfarth Shaw LLP, Diana Tabacopoulos, Ann H. Qushair, and James M. Harris for Defendant and Respondent.

_____

This class action is about meal breaks at work. Lead plaintiff Darryl Collins charged that Walgreens violated employees' rights to meal breaks. The trial court denied Collins's motion for class certification. We affirm.

Walgreens is a drug store chain. In a coordinated action, Collins moved for class certification on the theory that Walgreens's stated policy on meal breaks was proper, but that Walgreens's actual practice departed from its stated policy in an illegal and classwide way.

I

For a class certification motion, the burden on the moving party is to "demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021.) We generally afford trial courts great latitude in granting or denying class certification, and normally review a ruling on certification for an abuse of discretion. This deferential standard of review does not apply, however, "if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis." (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297.)

"A class certification motion is not a license for a free-floating inquiry into the validity of the complaint's allegations . . . . [¶] [H]owever, . . . 'issues affecting the merits of a case may be enmeshed with class action requirements . . . .' [Citations.] . . . Analysis of a class certification's propriety '[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.'. . . [Citation.] . . . '"Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims."'. . . When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them. [Citations.] The rule is that a court may 'consider[ ] how various claims and defenses relate and may affect the course of the litigation' even though such 'considerations . . . may overlap the case's merits.' [Citations.] . . . [I]f the

2

considerations necessary to certification 'overlap the merits . . . then the judge must make a preliminary inquiry into the merits.'. . . [¶] In particular, whether common or individual questions predominate will often depend upon resolution of issues closely tied to the merits. [Citations.] . . . [W]hether an element may be established collectively or only individually, plaintiff by plaintiff, can turn on the precise nature of the element and require resolution of disputed legal or factual issues affecting the merits. For example, whether reliance or a breach of duty can be demonstrated collectively or poses insuperable problems of individualized proof may be determinable only after closer inspection of the nature of the reliance required or duty owed and, in some instances, resolution of legal or factual disputes going directly to the merits." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at pp. 1023-1024.)

## II

The trial court used the proper criteria and analysis to analyze Collins's motion.

## A

California employers must give workers time off to eat meals at work. The law on meal breaks became clearer while this appeal was pending. In 2011, this court stayed briefing of this appeal to await the decision in the *Brinker* case. In 2012, our Supreme Court rendered its decision in *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th 1004. *Brinker* illuminated the law.

Before *Brinker*, courts were divided over (1) whether an employer must merely *make* meal breaks *available*, or (2) whether the employer must actually *ensure* employees take the breaks. This difference between the *make available* standard and the *ensure* standard is inobvious at first, and it does not seem that important either. But the practical consequences turn out to be great.

Under the *make available* standard, the employer merely must make meal breaks available. That is, the employer must relieve the employee of all job duties for the meal break, and then the employer may allow employees to decide for themselves whether to take the break. This *make available* standard thus allows an employee to choose to skip

3

the break and, for instance, to leave work early instead.  If the employer provides a break *opportunity* to the worker, the employer incurs no liability if the employee then decides to skip or delay the break.

Walgreens employees sometimes did decide to skip or delay breaks.  One employee explained, for instance, that "I generally take my lunch breaks, but about once a week I will skip lunch because I want to be able to leave work early."  Another testified that, "[e]ven though it has always been Walgreens' policy to provide a 30-minute meal period, I preferred to skip mine and instead leave early.  If I am not hungry, which is typically the case, I do not need a meal period, especially since it is unpaid time."  There was other similar evidence about skipping or delaying breaks.

That is the *make available* standard.

Under the alternative *ensure* standard, an employer must ensure employees take breaks.  That is, an employer must make workers take meal breaks whether they want them or not.  Employers are liable for missed meal breaks even when workers choose to skip their breaks because the *ensure* rule makes breaks mandatory.

One important difference between the *make available* standard and the *ensure* standard has to do with ease of proof.  The *ensure* standard can make it easier for plaintiffs to prove employer meal break violations, while the *make available* standard can make it harder.  Here is why.  Employers generally require employees to record hours worked by clocking in and clocking out, a process that typically generates centralized and computerized time records.  It is simple to use computer records to determine if each employee checked out on time for a full 30-minute meal break.  Meal break classes thus are relatively easy to certify under the *ensure* test:  each missed break automatically equals an employer violation.  Meal break classes are harder to certify under a *make available* test because the fact of a missed break does not dictate the conclusion of a violation (and thus employer liability).  Rather, under the *make available* standard you additionally must ask *why* the worker missed the break before you can determine whether the employer is liable.  If the worker was free to take the break and simply chose to skip

4

or delay it, there is no violation and no employer liability. This *make available* test thus can make analysis of break violations more complex than under the *ensure* standard.

*Brinker* adopted the *make available* standard and rejected the *ensure* standard. (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1017, & pp. 1034-1041 ["we conclude an employer's obligation is to relieve its employee of all duty, with the employee thereafter at liberty to use the meal period for whatever purpose he or she desires, but the employer need not ensure that no work is done"].)

Justice Werdegar's concurring opinion in *Brinker* proposed a presumption: "If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1053 [conc. opn. of Werdegar, J.].) Justice Liu joined Justice Werdegar's rebuttable presumption proposal, but the majority of justices did not. (See *id.* at pp. 1052-1055 [conc. opn. of Werdegar, J.]; *In re Marriage of Dade* (1991) 230 Cal.App.3d 621, 629 ["concurring opinions are not binding precedent"].)

B

The trial court used the right analysis because it correctly predicted the *Brinker* holding. The court said Walgreens must make breaks available for its employees, but the employer need not ensure employees actually take the meal breaks.

Collins suggests the trial court's statement of the law differed from *Brinker* in a material way, but this is inaccurate. "[M]ake available" were the words the trial court used. The *Brinker* Court said "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1034.) These words express the same idea. Collins advocated the *ensure* standard in the trial court. Both the trial court and the *Brinker* holding rejected the *ensure* standard. (*Ibid.*) The trial court correctly predicted the holding of *Brinker*.

5

Collins also argues on the basis of the rebuttable presumption Justice Werdegar proposed in her *Brinker* concurrence. This concurrence is not the law. Only two justices endorsed it.

In sum, the trial court used the correct legal framework to analyze Collins's motion. The *Brinker* decision validated this framework.

## III

Collins's motion failed in the trial court because Collins had no good proof. Collins tried to support his motion with evidence of three kinds: an expert opinion, emails, and declarations. This evidence was too weak to convince the trial court. The trial court evaluations were valid.

## A. Expert

The trial court gave no weight to the declaration of a statistician named Dr. Philip Gorman. Gorman analyzed payroll data to discover how often workers did not take their meal breaks. Gorman incorrectly assumed there was a Labor Code violation every time a worker did not take a timely break. Gorman thus incorrectly assumed Walgreens must ensure employees took their breaks. This assumption is legally unsound under *Brinker*'s holding, as set forth above.

Gorman's unsound assumption invalidated his expert opinion. "'An expert opinion has no value if its basis is unsound.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770; see also *id*. at p. 776 [trial court acts within its discretion when it excludes expert testimony that relies on data not relevant to the legal question at issue].) "The trial court . . . excluded the expert testimony for proper reasons." (*Sargon Enterprises, Inc. v. University of Southern California*, *supra*, 55 Cal.4th at p. 776.) The trial court properly exercised discretion by demanding that the expert opinion be correctly analyzed and scientifically reliable. "'Nothing in the trial judge's reasonable, straightforward and clearly articulated evidentiary ruling bears even a smidgeon of arbitrariness or capriciousness.'" (*Id*. at p. 776.)

6

## B.  Emails

Collins offered into evidence emails in which Walgreens's management repeatedly exhorted its store managers to ensure they complied fully with meal break law.

For instance, the first of these emails apparently was sent to Walgreens's "District 293 [managers]." (Walgreens had some 555 stores in California, divided into districts that vary in size and composition.)  This email was filled with casual capitalizations and ellipses.  It said:

"Just an FYI . . . if anyone is on this list, they did not receive a lunch.  Please, you must talk to the assistant managers and find out why. . . .  please make a big deal about this . . . remind employees that it is their job to ask for a break or lunch if they did not receive it, but also remind the Managers on duty that they must have a break schedule created for every shift . . .  there is no negotiation about this . . .  there is no excuse not to give a break or lunch . . .  look at your schedule and make sure you have the right people at the right time.  Two of the people received a lunch, but it was after the 5 hour mark and both did not take a 30 minute lunch.  Please. . .  Please address in every store. . . .  This is one day in the district . . . but this is occur[r]ing in every store!  Thank you for your complete follow through on this.  If you have any questions, please let me know.  I will be sending out some guidelines to help you succeed on making sure everyone gets a 30 minute break within 5 hours of their shift.  Thank you"

The trial court concluded the emails do not "support the assertion that employees are forced to miss meal periods on a classwide basis due to alleged understaffing, or for any other reason.  To the contrary, the emails would tend to support a finding of the significant importance Walgreens attached to the meal break issue and the efforts of Walgreens to provide meal breaks to all employees."

This email evidence cut against Collins's motion.  "[A]n employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." (*Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1040.)  These emails, however, do not show Walgreens pressuring

employees to omit breaks. They show the opposite: Walgreens pressuring store managers to ensure employees *took* meal breaks. The emails show respect for workers' rights, not pressure against them.

These emails are the opposite of the evidence in *Jaimez v. Daiohs USA, Inc.*, *supra*, 181 Cal.App.4th at pp. 1304-1305 (cited with approval in *Brinker Restaurant Corp. v. Superior Court*, *supra*, 53 Cal.4th at p. 1040). The employer in *Jaimez* set work schedules that made it "extremely difficult" for employees to complete their work and still take breaks. (*Jaimez v. Daiohs USA, Inc.*, *supra*, 181 Cal.App.4th at p. 1304; see also *Cicairos v. Summit Logistics, Inc.* (2005) 133 Cal.App.4th 949, 962 ["management pressured drivers to make more than one daily trip, making drivers feel that they should not stop for lunch"]; *Dilts v. Penske Logistics, LLC* (S.D.Cal. 2010) 267 F.R.D. 625, 638 [indicating informal anti-meal-break policy "enforced through 'ridicule' or 'reprimand'" would be illegal].) Walgreens, by contrast, stressed that store managers must set schedules to accommodate breaks.

In short, the trial court was right to give the emails no weight because they did not support Collins's motion.

### C. Declarations

Collins presented 44 form declarations. They were mostly identical. Each one stated that on some occasions "meal periods were not made available to me." The ostensible reason was "we were short-handed and I was required to work through my meal period."

The trial court gave the declarations no weight because they were unreliable. Most deposition witnesses recanted their declarations to some degree or entirely. The prevalence of falsity in the declarations raised questions about how Collins's lawyers had created these declarations in the first place.

For instance, Lisa Griswold signed one of these form declarations but then rejected it in her deposition. Her form declaration recited that occasionally "meal periods

8

were not made available to me," but then Griswold testified to the contrary: "I never had a problem getting my meal breaks."

Why was the core of Griswold's declaration false? Griswold's account of the process by which the plaintiffs' lawyers created her declaration is not reassuring. Griswold said "they asked me a variety of questions. I answered them honestly. They had to do with breaks and stuff. I told her I didn't really have much of an issue with my breaks as far as, you know, taking a lunch and not getting it or anything like that or working off the clock. They said I would receive something else in the mail, to sign it, and to send it back. So I did as I was told." Then the declaration "came in [the mail], and they asked me to sign it; I signed it."

"[Griswold]: I guess it was kind of ignorant of me not to read [the declaration] but —

"Q: So you didn't read [the declaration] when you signed it?

"[Griswold]: Not really."

Griswold explained, "I didn't think it was going to be a big deal."

So Griswold said one thing, the lawyers wrote down another, and Griswold blindly signed whatever they sent her.

In another example, Ludbi Chacon also signed the form declaration about how meal periods were not made available to her. But when deposed about this claim, Chacon testified,"I didn't put this — I didn't write this. I never said I didn't take my breaks, I said that I never took my last rest period, that's what I said. I — I never said that I never took my lunch — my meal period, breaks, whatever."

"Q: So this is not your language in this declaration?

"[Chacon]: I never told them that I never took my breaks and I just told you right now, I did take my breaks and I didn't say that I — I never told them that I never took my breaks. They ask me if I took the — my meal period before the four hour and I told them I do not remember, that's what I said. I never said that I didn't take my breaks. God . . . ."

There was other similar evidence.

The trial judge repeatedly said these declarations "appalled" him, and he told counsel, "You know better."

The trial court was "especially troubled" that, once deposed, so many witnesses recanted their declarations.

Form declarations present a problem. When witnesses speak exactly the same words, one wonders who put those words there, and how accurate and reliable those words are.

There is nothing attractive about submitting form declarations contrary to the witnesses' actual testimony. This practice corrupts the pursuit of truth.

It was not error for the trial court to give these unreliable declarations no weight.

IV

Collins raised an opening argument about Labor Code section 226.7 to which Walgreens responded. In reply, Collins dropped the point. That is waiver. Collins also cites *Schulz v. Qualxserv, LLC* (S.D.Cal. Apr. 26, 2012, No. 09-CV-17-AJB (MDD)) 2012 U.S. Dist. LEXIS 58561, 2012 WL 1439066, but that ruling did not concern inadequate expert evidence, inapt emails, or unreliable declarations.

**DISPOSITION**

The order is affirmed.  Walgreens is entitled to recover its costs on appeal.


WILEY, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/13/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re<br><br>WALGREEN COMPANY OVERTIME CASES | B230191<br><br>(Judicial Council Coordination Proceeding No. JCCP 4511)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion filed in the above-entitled matter on October 23, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

CHANEY, Acting P. J.           JOHNSON, J.