[No. C048133. Third Dist. Oct. 27, 2005.]

ALBERT H. CICAIROS et al., Plaintiffs and Appellants, v. SUMMIT LOGISTICS, INC., Defendant and Respondent.

950

COUNSEL

Weinberg, Roger & Rosenfeld, David A. Rosenfeld and Caren P. Sencer for Plaintiffs and Appellants.

Grotta, Glassman & Hoffman, David F. Faustman, Lester F. Aponte and Shea Lukacsko for Defendant and Respondent.

OPINION

**NICHOLSON, Acting P. J.**—This appeal involves five plaintiffs who sued their former employer for violations of Labor Code and Industrial Welfare Commission wage order provisions relating to meal periods, rest breaks, and itemized wage statements. The trial court granted summary judgment for the defendant. We conclude the trial court erred and therefore reverse.

## PROCEDURE

The plaintiffs' complaint included claims for violation of (1) the meal period provision of Labor Code section 512 and Industrial Welfare Commission (IWC) wage order No. 9, section 11; (2) the rest break provision of IWC wage order No. 9, section 12; and (3) the itemized wage statement provision of Labor Code section 226 and IWC wage order No. 9, section 7. Both sides moved for summary judgment. The trial court granted the defendant's motion and entered judgment for the defendant.

## BACKGROUND

*Meal Periods*

The Labor Code provides that: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." (Lab. Code, § 512, subd. (a).) The language of IWC wage order No. 9 relating to meal periods tracks the language in the Labor Code. (Cal. Code Regs., tit. 8, § 11090, subd. 11.)

Wage order No. 9 provides a penalty for noncompliance with the meal period provision: "If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (Cal. Code Regs., tit. 8, § 11090, subd. 11(D).)

An opinion letter from the Division of Labor Standards Enforcement (DLSE) states: "The requirement that employees in the State of California receive a meal period is what is commonly known as a minimum state standard." (Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.12.09-1 (Dec. 9, 2002) p. 2.) The same letter says that "a collective bargaining agreement may not be used as a tool to waive the requirement that an employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes. The IWC Orders have never allowed an opt-out from the requirements of a meal period." (*Ibid.*, see *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7–8 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [though not binding, agency interpretation may be helpful].)

*Rest Breaks*

Wage order No. 9 provides: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the

middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." (Cal. Code Regs., tit. 8, § 11090, subd. 12(A).)

"If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." (Cal. Code Regs., tit. 8, § 11090, subd. 12(B).)

An opinion letter from DLSE states: "The requirement that every employee have a net 10-minute rest period every four hours or major fraction thereof is a *state-mandated minimum labor standard*." (Dept. of Industrial Relations, DLSE, Opinion Letter No. 1995.06.02 (June 2, 1995) p. 2, underscoring in original, italics added, fn. omitted.)

### *Itemized Wage Statements*

■ The Labor Code provides: "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." (Lab. Code, § 226, subd. (a).) Employers who knowingly and intentionally fail to comply with this provision are subject to monetary penalties and are guilty of a misdemeanor. (Lab. Code, §§ 226, subd. (e), 226.6.)

An opinion letter from DLSE was written in response to questions regarding the application of Labor Code section 226. "[T]he obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked." (Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.05.17 (May 17, 2002) p. 3.) "The failure to list the precise number of hours worked during the pay period conflicts with the express language of the statute and stands in the way of the statutory purpose." (*Ibid.*) "If it is left to the employee to add up the daily hours shown on the time cards or other records so that the employee must perform arithmetic computations to determine the *total hours worked* during the pay period, the requirements of section 226 would not be met." (*Id.* at p. 6, italics in original.)

*Facts*

The defendant ran a warehousing business that delivered groceries and perishable goods to Safeway stores in California, Nevada, and Hawaii. The plaintiffs worked for the defendant as truck drivers and were members of the Teamsters Union Local 439. The union and the defendant were parties to a collective bargaining agreement which provided for meal periods and rest breaks.

The collective bargaining agreement provided: "Drivers and hostlers shall take a thirty (30) minute lunch period no later than five (5) hours from their regularly scheduled start time." It also granted "two (2) fifteen (15) minute paid rest periods per eight (8) or ten (10) hour shift—one (1) during the first half of the shift and one (1) during the last half of the shift."

The collective bargaining agreement contained a mandatory arbitration provision which stated: "A grievance is any controversy between the Company, the Union or an employee arising out of an alleged violation of a specific provision of this Agreement. . . . The grievance and arbitration procedure of this Agreement will be the sole and exclusive means available for resolving grievances." The plaintiffs did not file grievances according to the arbitration provisions regarding the claims made in this lawsuit. The collective bargaining agreement also said that the plaintiffs were subject to Department of Transportation (DOT) regulations.

The defendant used an "Activity Based Compensation" system in determining the plaintiffs' wages. Each truck had a computerized on-board system called the XATA system which recorded various factors such as speed, starts and stops, and time. Truck drivers who worked for the defendant had to input factors manually so the on-board computer system could keep track of activities accurately. Absent one of the designated reasons for a delay (such

as road construction, for example), a trip that took longer than expected resulted in a loss to the driver because the driver was not paid for the extra time. The defendant did not schedule meal periods or include an activity code for them. The defendant's management pressured drivers to make more than one daily trip. No activity code existed for rest breaks, and they were not on the list of acceptable delays. Some drivers skipped their rest breaks because of this policy.

The defendant provided an earnings statement to the plaintiffs, as well as a statement entitled "Driver Trip Summary—Report of Earnings." These trip summaries did not list the actual hours each plaintiff worked per pay period. Instead, they listed the dispatch date and time for when a driver began working each shift. The earnings statements did not provide an accurate statement of hours worked. No matter how many hours a driver worked, the statements always listed 40 hours per week.[1]

## STANDARD OF REVIEW

■ The trial court must grant a defendant's summary judgment motion if all the papers submitted show there is no triable issue of fact and the facts presented to the trial court do not support the plaintiff's alleged causes of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) ■ On appeal after a grant of summary judgment, we independently apply the same standard. (*Id.* at p. 860.)

## DISCUSSION

### I

### Collins *Analysis*

The trial court's grant of summary judgment for the defendant was based on its broad reading of *Collins v. Overnite Transportation Co.* (2003) 105 Cal.App.4th 171 [129 Cal.Rptr.2d 254] (hereafter *Collins*). The trial court believed that the claims at issue in this case were covered by *Collins's* interpretation of the subdivision 3(L) exemption (the motor carrier exemption). However, *Collins* only considered overtime pay claims, not meal periods, rest breaks, and itemized wage statements. The trial court erred by extending the holding of *Collins* to the claims raised in this appeal.

The *Collins* court examined the motor carrier exemption in formulating its holding. (*Collins, supra,* 105 Cal.App.4th at p. 173.) *Collins's* discussion

---

[1] The plaintiffs request judicial notice of DLSE's Interpretation and Enforcement Manual. The request is granted.

reveals that it pertained only to overtime compensation, not to meal periods, rest breaks, and itemized wage statements.

At the beginning of the opinion, the court stated that the appellants were "seeking compensation for unpaid overtime pay . . . ." (*Collins, supra,* 105 Cal.App.4th at p. 173.) In its discussion of wage order No. 9, the court never mentioned meal periods, rest breaks or itemized wage statements. (*Collins, supra,* at pp. 174–175.) The only published case to cite *Collins* involved an overtime wage claim. (*Watkins v. Ameripride Services* (9th Cir. 2004) 375 F.3d 821, 825.) The court in *Watkins* discussed what "IWC Wage Order No. 9 . . . excludes from its *overtime pay* requirements . . . ." (*Watkins v. Ameripride Services, supra,* at p. 825, italics added.)

Although the only subject of discussion in *Collins* was overtime compensation, the opinion mentioned that the plaintiffs had sought "other relief." (*Collins, supra,* 105 Cal.App.4th at p. 173.) During the summary judgment proceedings in this case, the trial court took judicial notice of the complaint filed in *Collins*. That complaint, filed by the same attorney representing the plaintiffs here, was nearly identical to the complaint filed in this case and included allegations relating to meal periods, rest breaks, and itemized wage statements. The trial court below relied on *Collins* as authority concerning those allegations, even though they were not addressed in the *Collins* opinion. Such reliance was error.

█ "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. [Citation.] Further, cases are not authority for propositions not considered. [Citation.]" (*McDowell & Craig v. City of Santa Fe Springs* (1960) 54 Cal.2d 33, 38 [4 Cal.Rptr. 176, 351 P.2d 344].) Courts applying precedent cannot peek behind the opinion to earlier proceedings to enlarge the meaning of the opinion based on what happened in the trial court but was not recounted by the appellate court. What was in the complaint may not fully reflect the positions of the parties and the status of the issues on appeal. For example, in *Collins,* the parties may have resolved the issues relating to meal periods, rest breaks, or itemized wage statements before appeal. Or, more likely, the plaintiffs simply decided not to pursue those claims at the appellate level. For these reasons, the trial court should not have looked beyond the appellate opinion in *Collins* to determine the scope of the holding. Having properly restricted our analysis of *Collins* as precedent, we conclude *Collins* is not authority for holding that the plaintiffs' meal period, rest break, and itemized wage statement contentions are without merit.

II

*Motor Carrier Exemption*

■ Section 3 of wage order No. 9 governs how many hours an employee can work. Subdivision 3(L) provides: "The provisions of this section are not applicable to employees whose hours of service are regulated by [state and federal regulations concerning drivers' hours of service]." The entirety of wage order No. 9 was adopted as *section* 11090 of title 8 of the California Code of Regulations. Since the exemption in subdivision 3(L) refers to "the provisions of this *section*" (italics added), the exemption applies, argues the defendant, to the entire wage order, which was adopted as "section" 11090, that is, all of wage order No. 9. This strained interpretation fails. In context, the term "section" in the exemption of subdivision 3(L) refers only to section 3 of wage order No. 9, governing hours of service (not meal periods, rest breaks, and itemized wage statements) and does not refer to the entire wage order.

■ "As quasi-legislative regulations, the wage orders are to be construed in accordance with the ordinary principles of statutory interpretation." (*Collins, supra,* 105 Cal.App.4th at p. 178.) ■ "As a general rule, the courts defer to the agency charged with enforcing a regulation when interpreting a regulation because the agency possesses expertise in the subject area." (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 [285 Cal.Rptr. 515].)

DLSE provides a table entitled "Exemptions from the overtime laws" which lists categories of employees who are "Exempt from Orders," "Exempt from overtime provisions," or exempt from specific sections of a particular wage order. The category of "**Drivers** whose hours are regulated by the U.S. Department of Transportation . . . ." is simply listed as "Exempt from overtime provisions." (Boldface in original.)

When wage order No. 9 refers to itself in its entirety, the phrase "this order" or "this wage order" is used. The first part of the wage order, entitled "Applicability of Order," states: "This order shall apply to all persons employed in the transportation industry . . . ." (Cal. Code Regs., tit. 8, § 11090, subd. 1.) It also lists some groups that are exempt from the entire order. For example, "[t]he provisions of this order shall not apply to outside salespersons." (*Id.,* subd. 1(C).) The "order" is then broken down into 22 "sections." The difference between the entire "order" and its individual "sections" is clear.

DLSE has interpreted the motor carrier exemption to apply only to over time provisions and the language of the wage order itself supports this construction. The layout of the wage order makes it clear that a "section" is one of the 22 separate areas numbered 1 through 22. Based on the language of the wage order, if the motor carrier exemption was meant to apply to the whole order, the term "this order" would have been used instead of "this section."

Basic rules of statutory construction, as well as DLSE's interpretation, require that the phrase "this section" in the motor carrier exemption be read to encompass only the provisions of section 3 "Hours and Days of Work" of which it is a part. Therefore, truck drivers are not exempted from the other requirements of wage order No. 9.

## III

### Collective Bargaining Agreement

The defendant argues the collective bargaining agreement bars the plaintiffs from bringing their claims relating to meal periods and rest breaks to court. Therefore, the defendant claims, this court has no jurisdiction over the meal period and rest break claims and should dismiss these claims and consider only the itemized wage statement claim. The defendant further contends that the plaintiffs are really trying to enforce the rights given to them in the collective bargaining agreement. The plaintiffs argue that they are not required to bring their claims to arbitration because they deal with the violation of minimum statutory labor standards, not with rights obtained through the collective bargaining process. We agree with the plaintiffs that they are not required to take these claims to arbitration.

■ The United States Supreme Court "has repeatedly made clear that arbitration may resolve statutory claims as well as those purely contractual *if the parties so intend . . . .*" (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1075 [90 Cal.Rptr.2d 334, 988 P.2d 67], italics added.) "Even if the collective bargaining agreement were identical to the statutory provisions . . . , we are not convinced [the plaintiff] would be required to exhaust internal grievance procedures before filing a lawsuit to enforce her statutory rights." (*Veguez v. Governing Bd. of Long Beach Unified School Dist.* (2005) 127 Cal.App.4th 406, 417, fn. 8 [25 Cal.Rptr.3d 526].)

The collective bargaining agreement entered into between the plaintiffs and the defendant does not contain a provision whereby the plaintiffs agreed to

arbitrate alleged violations of statutory rights. The language of the arbitration provision reads, "A grievance is any controversy between the Company, the Union or an employee arising out of an alleged violation of a specific provision of this Agreement." Although statutory rights violations allegations can be resolved by arbitration, the parties in this case did not agree to do so.

Arbitration is also not required simply because the provisions relating to meal periods and rest breaks in the collective bargaining agreement are almost identical or even more generous than under state law. Since minimum statutory labor standards are at issue here, the parties could not waive the required meal periods or rest breaks.

Since statutory rights were at issue and there is no indication in the collective bargaining agreement of an intent to arbitrate statutory rights violations allegations, the plaintiffs were not required to first bring their claims to arbitration.

IV

*Itemized Wage Statements*

The plaintiffs claim the defendant violated Labor Code section 226 and IWC wage order No. 9, section 7, by failing to give them adequate itemized wage statements. The defendant contends that it complied with the wage statement requirements by providing the plaintiffs with both a trip summary and an earnings statement.

The earnings statements submitted in support of the motion for summary judgment do not prove the defendant supplied adequate wage statements. They are confusing, and it is not clear that they reflect accurate information. For example, an "earnings statement" issued to plaintiff Cicairos states that he had 28.90 "hours" of "activity" and 8 "hours" of "holiday," but then it states he had 1260.90 "hours" of "mileage." Without more, this wage statement is deficient because it does not give an accurate report of the hours plaintiff Cicairos worked, at least not on its face. The "earnings statement" for plaintiff Cicairos for the next week is even more confusing, reporting that he worked 2282.31 "hours" of "activity" at a "rate" of .3. We need not continue and show all of the anomalies and confusing elements of the wage statements. Suffice it to say, the evidence did not support summary judgment in the defendant's favor.

The "Driver Trip Summary—Report of Earnings" statements, which drivers received with their earnings statements, did not remedy the deficiencies in

the earnings statements. The trip summaries showed a time the driver was dispatched, which was one or more times on a working day. After the dispatch time were columns for how many miles traveled, stops, delay minutes, and other categories. The summaries did not, however, show how many hours the driver worked each day or during the pay period. Thus, the defendant failed to provide the plaintiffs with itemized wage statements that meet the requirements of Labor Code section 226.

■ The plaintiffs also claim that the defendant failed to provide them with proper itemized wage statements because both the wage statements and driver trip summaries failed to list the defendant employer's name and address. California law requires employer's to list "the name and address of the legal entity that is the employer" on their employee's itemized wage statement. (Lab. Code, § 226, subd. (a).)

The wage statements in the record do not list either the employer's name or address. The driver trip summaries have the word "SUMMIT" written at the top right-hand corner of the paper with a logo. The full name of the defendant is "Summit Logistics, Inc." In addition, the driver trip summaries do not list the employer's address.

Either taken separately or together, the wage statements and driver trip summaries do not list the defendant employer's name and address and thus are not adequate itemized wage statements.

## V

### Evidentiary Burden

The defendant contends that the plaintiffs failed to meet their evidentiary burden regarding their lack of proper meal periods and rest breaks. The defendant also claims that it submitted substantial admissible evidence of its compliance with the meal period and rest break provisions. We disagree.[2]

■ "[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee. In such a situation, imprecise evidence by the employee can provide a sufficient basis for damages." (*Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 [245 Cal.Rptr. 36].)

---

[2] The plaintiffs admit that Eric Nyland "functioned only as a Hostler during the relevant time period" and that "the problems attendant to the truck drivers did not apply to the Hostlers." Therefore, he should be dismissed from this action.

*Meal Periods*

The defendant claims that it produced admissible evidence proving that it gave the plaintiffs their required meal breaks. We disagree.

Wage order No. 9 requires "[e]very employer [to] keep accurate information with respect to each employee . . . : [¶] . . . [¶] . . . Meal periods, split shift intervals and total daily hours worked shall also be recorded. Meal periods during which operations cease . . . need not be recorded. [¶] . . . [¶] . . . An employee's records shall be available for inspection by the employee upon reasonable request." (Cal. Code Regs., tit. 8, § 11090, subd. 7(A)(3), (C).)

The defendant believes that a declaration made by the manager of its payroll department proves it gave adequate meal periods to the plaintiffs. In her declaration, the payroll manager stated: "The [collective bargaining agreement] provides that the drivers are entitled to take a 30-minute meal break (taken on his/her own time) after working five hours. . . . [¶] . . . [¶] Since drivers are constantly on the road, his/her activity cannot be regulated by [the defendant]. Thus, the decision for a driver to take the meal break(s) and rest periods is left to his/her discretion. It is assumed by [the defendant] that the drivers take them."

The defendant had a computerized XATA system on each truck which allowed it to keep track of various aspects of the drivers' activities, such as speed, starts and stops, and time. Furthermore, drivers had to input factors manually, such as road construction and heavy traffic, factors the onboard computer system could not sense itself. By requiring its drivers to keep track of these factors, the defendant was indeed regulating the drivers' activity to a certain extent. Although the defendant regulated its drivers' activities in these areas, it did not schedule meal periods, include an activity code for them, or monitor compliance. As a result, "most drivers ate their meals while driving or else skipped a meal nearly every working day." Furthermore, the defendant's management pressured drivers to make more than one daily trip, making drivers feel that they should not stop for lunch.

 Under the facts presented in support of summary judgment, the defendant's obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken, because employers have "an affirmative obligation to ensure that workers are actually relieved of all duty." (Dept. of Industrial Relations, DLSE, Opinion Letter

No. 2002.01.28 (Jan. 28, 2002) p. 1.) They also have a duty, under wage order No. 9, to record their employees' meal periods. The defendant does not claim to have complied with this provision.

The collective bargaining agreement provides: "Lunch and rest periods will be scheduled by the Company." Yet, the defendant's payroll manager claimed meal periods and rest breaks were the sole responsibility of the drivers because the company could not regulate the drivers' activities on the road. One plaintiff said "there was no lunch schedule."

Under these facts, the defendant has failed to establish it provided the plaintiffs with their required meal periods.

*Rest Breaks*

The defendant also claims it produced sufficient evidence to show that it provided the plaintiffs with their proper rest breaks. We disagree.

Wage order No. 9 contains a section entitled Records in which it lists information that the employer is responsible for keeping. (Cal. Code Regs., tit. 8, § 11090, subd. 7.) It specifically notes, however, that "authorized rest periods need not be recorded." (*Id.*, subd. 7(A)(3).)

Although the defendant was not required to keep records of the plaintiffs' rest breaks and the collective bargaining agreement authorized rest breaks, the defendant could still be liable if the plaintiffs did not take their full 10-minute rest breaks because, as a practical matter, the defendant did not *permit* the plaintiffs to take their rest breaks. (See Cal. Code Regs., tit. 8, § 11090, subd. 12(A) [employer must authorize *and permit* rest period].) The XATA computer system did not include a code for rest breaks This may have encouraged drivers not to take their 10-minute breaks. Drivers said they felt pressured not to take their rest breaks because rest breaks "were not on the list of delays that were paid." One plaintiff stated: "Because of the pressure to complete trips quickly, and the fact that a rest break would cost me money, I never took a rest break except when I was waiting in line to load or unload." Apparently, the defendant's management was aware that some drivers were not taking rest breaks.

The defendant has not proven it supplied the plaintiffs with their rest periods; therefore, summary judgment was improper.

## DISPOSITION

The judgment is reversed. The plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 27(a).)

Raye, J., and Robie, J., concurred.

A petition for a rehearing was denied November 23, 2005, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied January 18, 2005, S139397. Chin, J., did not participate therein.