189 Cal.App.4th 751 (2010)
ROGELIO HERNANDEZ, Plaintiff and Appellant,
v.
CHIPOTLE MEXICAN GRILL, INC., Defendant and Respondent.
No. B216004.
Court of Appeals of California, Second District, Division Eight.
September 30, 2010.
As modified October 28, 2010.
*754 Altshuler Berzon, Michael Rubin, James M. Finberg, Eve Cervantez, Danielle E. Leonard; Rastegar & Matern, Matthew J. Matern and Douglas W. Perlman for Plaintiff and Appellant.
Sheppard, Mullin, Richter & Hampton, Richard J. Simmons and Geoffrey D. DeBoskey, for Defendant and Respondent.

OPINION
GRIMES, J.

INTRODUCTION
Plaintiff and appellant Rogelio Hernandez (Hernandez) appeals from the order denying his motion for class certification and granting the motion to deny class certification of defendant and respondent Chipotle Mexican Grill, Inc. (Chipotle). We hold that the trial court did not abuse its discretion and affirm. In doing so, we conclude that employers must provide employees with breaks, but need not ensure employees take breaks.

FACTUAL AND PROCEDURAL BACKGROUND

1. Factual background

Chipotle is a fast-food restaurant chain, currently employing about 3,000 hourly employees in its approximately 130 California restaurants. All Chipotle employees are nonexempt, hourly workers entitled to overtime compensation when earned, including managers, except for the salaried position of "restaurateur." Each Chipotle restaurant is managed by either a restaurateur or a general manager. Some employees move in and out of supervisory roles. For example, employees may be responsible for scheduling meal and rest breaks on some shifts and weeks, but not on others. The average Chipotle employee earns $8.37 per hour. The number of employees at each Chipotle restaurant *755 varies from 18 to 40. Also, staffing patterns and work shift lengths vary from restaurant to restaurant, season to season, and day to day, as do the busy periods.
Chipotle's corporate headquarters establishes employment policies for its restaurants. Chipotle's written policies require managers to provide employees with meal and rest breaks. Managers are to determine when, or if, employees are permitted to take breaks. Employees are not permitted to self-initiate breaks and are prohibited from skipping breaks. Chipotle mandates employees take one uninterrupted 30-minute meal break if they work over five hours, and two 30-minute meal breaks if they work more than 10 hours. Managers are to provide employees with a 10-minute rest break if they work three and one-half hours or more. If employees work more than six hours a day, they are to take two paid rest breaks of at least 10 minutes each.
Chipotle directs employees to record their breaks. Chipotle pays employees for the time they take for breaks even though they are relieved of duty and free to leave the restaurant, so there is no financial incentive for employees to record all breaks accurately. Chipotle provides free food and beverages to encourage employees to take their meal breaks and provides comfortable break facilities. Paying for meal periods and providing free food is part of Chipotle's culture and helps Chipotle recruit and retain employees.
Hernandez worked in the Chipotle Manhattan Beach restaurant from February 2002 until it closed in May 2003. Soon thereafter, he worked in the Hawthorne restaurant, where he remained until Chipotle terminated his employment in July 2006. During his employment, Hernandez was an hourly worker.

2. Procedure

a. The operative complaint

Hernandez filed this lawsuit against Chipotle on his behalf and on behalf of a proposed class of similarly situated nonmanagerial employees. Hernandez alleged Chipotle violated labor laws by denying employees meal and rest breaks.

b. Chipotle's motion to decertify the class

Chipotle moved to deny class certification and strike the class allegations. Chipotle contended it had met its responsibility under California law to provide (authorize and permit) employees with meal and rest breaks.
*756 Chipotle submitted 57 declarations from employees who attested that they had received all meal and rest breaks. The employees further declared that some employees occasionally had forgotten to record breaks, or had recorded them inaccurately. Chipotle submitted 16 manager declarations in which the managers declared the following: Employees received meal and rest breaks in compliance with state law. Management did not allow employees to return early from breaks. Because Chipotle paid for breaks, employees did not always remember to clock in and out when going on a break. When employees forgot to clock in and out at the beginning or end of their shifts, management instructed the employees to notify their manager, who then corrected the records. But Chipotle instructed its managers not to correct time records if an employee forgot to clock in and out for meal and rest breaks or if they made a mistake in doing so, because their pay would not be affected. Nonetheless, some managers edited employees' time records to record meal and rest breaks when an employee forgot to clock in or out.
Chipotle also submitted the declaration of Human Resource Director Brian Brown, who explained Chipotle's organization and methods of operation. He declared in part: "Because crew members are paid for meal and rest breaks, they do not have a financial incentive to record their breaks accurately and occasionally fail to do so. . . . [I]f a crew member records the start of a meal break and forgets to record the time it ends, the meal break is still fully paid." Several Chipotle crew members and managers corroborated Mr. Brown's testimony that employees do not always remember to "clock-out" before going on a break. For example, David Pineda, the service manager at Chipotle's Hawthorne location testified, "Although we emphasize that employees should clock in and out for their meal and rest periods, I am aware that some employees do not always do so. Because the company pays employees for their meal and rest period time, employees do not always think to clock-out before going on a break."

c. Hernandez's motion to certify the class

About two weeks after Chipotle filed its motion, Hernandez moved for class certification. Hernandez estimated that the class consisted of thousands of current and former employees who worked millions of shifts for Chipotle beginning in July 2003. The proposed class excluded those individuals in managerial positions. Hernandez conceded that California employers need only provide employees with rest breaks. However, Hernandez cited Cicairos v. Summit Logistics, Inc. (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] to support his theory that California employers were obligated to ensure employees took meal breaks.
Hernandez submitted a compilation of his time records. He also submitted excerpts from his deposition in which he testified to the following: While *757 employed by Chipotle in Manhattan Beach, he always received his meal and rest breaks, except on one occasion. However, when he worked in Hawthorne, managers interrupted his meal breaks two to three times a week.
Hernandez additionally submitted declarations from a total of 23 nonmanagement, hourly employees who worked at Chipotle restaurants in California. The employees declared that sometimes their managers denied or interrupted their breaks, in varying degrees.
Pursuant to court order, Chipotle served a computerized spreadsheet with statistics relating to employee time records. Thereafter, Hernandez filed a supplemental expert declaration from professor of statistics Richard Kakigi, Ph.D. He had analyzed Chipotle's clock-in and clock-out data from July 1, 2003, through February 9, 2009, for nonexempt employees, "excluding employees who exclusively occupied any of the five management positions for the entire class period." (Fn. omitted, italics added.) Professor Kakigi concluded as follows: Ninety-two percent of the employees had missed at least one meal break. On average, each employee missed meal breaks on 20.5% of his or her workdays. "All stores (100%) had at least one missed meal break. On average, each employee had a missed meal break on 20.5% of his or her workdays." Eighty-eight percent of employees had at least one missed rest break, and on average each employee had a missed rest break on 13.0% of his or her workdays. All stores (100 percent) had at least one missed rest break, and on average each store had a missed rest break on 13.0 percent of its employee workdays.[1] In reaching his conclusions, Professor Kakigi classified as missed meal breaks instances where the records did not reflect any break period, as well as instances where an employee had taken a meal break of less than 30 minutes. He classified breaks of 30 minutes or longer as meal breaks and breaks 10 to 29 minutes long as rest breaks.
In response, Chipotle argued the professor's conclusions had no value because (1) he counted as a missed break any employee who refused to take a break, as well as those who might have reported back to work one minute early; (2) the employee records included those who worked occasionally as managers, thereby creating an inherent conflict of interest among putative class members; (3) the records did not establish a universal policy or practice as they demonstrated that on the "vast majority of workdays and for the vast majority of employees, meal periods were taken"; and (4) the records did not establish why breaks were not taken or were too short.

*758 d. The trial court's ruling on the motion to decertify and the motion to certify

After a lengthy hearing, the trial court issued a comprehensive written ruling. The court found Hernandez had established the factors of numerosity, ascertainability of the class, typicality of Hernandez's claims, and adequacy of Hernandez and his counsel as representatives. However, the court denied certification on the grounds that individual issues predominated over common issues, and class treatment was not superior to individual actions.
The trial court held that with regard to rest breaks, as conceded by Hernandez, employers need only authorize and permit such breaks, which means to make them available. The trial court recognized that the California Supreme Court had granted review of two cases to decide whether California law required employers to ensure employees take meal breaks, or if the proper standard was that employers need only provide employees with the opportunity to take such breaks.[2] The trial court concluded the Supreme Court likely was to decide California employers were required to provide employees with the ability to take breaks, not to ensure breaks be taken. The trial court further ruled that although there were common questions regarding whether Chipotle's policy was to provide breaks, whether employees "missed or received shorten[ed] meal and rest breaks[,] and whether such constituted an unfair business practice, these questions do not predominate." The trial court stated that if the Supreme Court held employers had to ensure employees take breaks, class action treatment of this case would be appropriate.
The trial court found that class adjudication of the wage and hour break claims was not manageable, nor would it provide a substantial benefit to the court or parties. Rather, individual inquiry was "required to determine if [Chipotle] is liable for denying proper meal and rest breaks to each of its thousands of employees." Further, adjudication of these individual issues rendered classwide adjudication unmanageable because, even if an employee's time record indicated a break was missed, that in and of itself did not establish that Chipotle failed to provide, authorize or permit the employee to take a meal or rest break. Additionally, Hernandez failed to present a clear outline of how the court and parties could use a sampling of testimony to address all of the individual questions that had to be answered.

*759 DISCUSSION

1. Class actions and the standard of review

(1) Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (See also Cal. Rules of Court, rule 3.760 et seq.) Class certification requires the party seeking certification to prove "(1) . . . a sufficiently numerous, ascertainable class, (2) . . . a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the `community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (Fireside Bank v. Superior Court (2007) 40 Cal.4th 1069, 1089 [56 Cal.Rptr.3d 861, 155 P.3d 268] (Fireside Bank), citing among others, Code Civ. Proc., § 382 & Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 326 [17 Cal.Rptr.3d 906, 96 P.3d 194] (Sav-On Drug Stores).)
(2) "A class action may be maintained even if each member must individually show eligibility for recovery or the amount of damages. But a class action will not be permitted if each member is required to `litigate substantial and numerous factually unique questions' before a recovery may be allowed. [Citations.] . . . `[I]f a class action "will splinter into individual trials," common questions do not predominate and litigation of the action in the class format is inappropriate. [Citation.]' [Citations.]" (Arenas v. El Torito Restaurants, Inc. (2010) 183 Cal.App.4th 723, 732 [108 Cal.Rptr.3d 15] [order denying certification on misclassification allegations affirmed where trial court found tasks performed by restaurant managers, and time devoted to each task varied widely from restaurant to restaurant].)
A ruling on certification is reviewed for abuse of discretion. (Sav-On Drug Stores, supra, 34 Cal.4th at p. 326.) "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification. The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed `unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal `"even though there may be substantial evidence to support the court's order."' [Citations.]" (Linder v. Thrifty Oil Co. *760 (2000) 23 Cal.4th 429, 435-436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (Linder); accord, Sav-On Drug Stores, supra, at pp. 326-327.)
Thus, "[t]he appeal of an order denying class certification presents an exception to the general rule that a reviewing court will look to the trial court's result, not its rationale. If the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, `an appellate court is required to reverse an order denying class certification . . ., "even though there may be substantial evidence to support the court's order."' [Citations.] In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial." (Bartold v. Glendale Federal Bank (2000) 81 Cal.App.4th 816, 828-829 [97 Cal.Rptr.2d 226].) "`[W]here a certification order turns on inferences to be drawn from the facts, "`the reviewing court has no authority to substitute its decision for that of the trial court.'"' [Citations.]" (Sav-On Drug Stores, supra, 34 Cal.4th at p. 328.)

2. Employers need only provide employees with breaks

The trial court first held that California law requires that employers provide, but not ensure, employees take meal and rest breaks. Since we must ascertain if the trial court's ruling was based upon an erroneous legal analysis (Linder, supra, 23 Cal.4th at pp. 435-436), we turn to this legal issue.

a. The trial court's legal analysis was correct

(3) Labor Code section 226.7, subdivision (a) states: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Labor Code section 512, subdivision (a) states that employers must provide employees with meal periods of not less than 30 minutes if they work shifts of more than five hours per day and a second 30-minute meal break if they work shifts longer than 10 hours per day.[3]
(4) "[T]he Industrial Welfare Commission (IWC) `is . . . empowered to formulate regulations (known as wage orders) governing employment in the *761 State of California . . . .'" (Ghazaryan v. Diva Limousine, Ltd. (2008) 169 Cal.App.4th 1524, 1534 [87 Cal.Rptr.3d 518], quoting Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 561-562 [59 Cal.Rptr.2d 186, 927 P.2d 296].) Labor Code section 516 specifically authorizes the IWC (Industrial Welfare Commission) to "adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in California consistent with the health and welfare of those workers." IWC's wage orders are codified in the California Code of Regulations. (E.g., Sav-On Drug Stores, supra, 34 Cal.4th at p. 324; Ghazaryan, supra, at p. 1534.)
(5) Wage order No. 5-2001, which governs restaurant workers like the Chipotle employees, echoes the language of Labor Code section 512. It requires employers to provide employees with a meal period of not less than 30 minutes for a work period of more than five hours. (Cal. Code Regs., tit. 8, § 11050, subd. 11.)[4] Similarly, wage order No. 5-2001 states that employers are to authorize and permit employees to take a 10-minute rest break for every four hours worked. (Cal. Code Regs., tit. 8, § 11050, subd. 12.)[5] California employers are required to keep accurate records of meal, but not rest, breaks. (Cal. Code Regs., tit. 8, § 11050, subd. 7; cf. Franco v. Athens Disposal Co., Inc. (2009) 171 Cal.App.4th 1277, 1299 [90 Cal.Rptr.3d 539].)
(6) Hernandez admits employers must provide, i.e., authorize and permit, employees to take rest breaks, but contends a different standard applies to meal breaks and thus, the trial court's legal analysis was faulty. This contention is not persuasive. "The California Supreme Court has described the interest protected by meal break provisions, stating that `[a]n employee forced to forgo his or her meal period . . . has been deprived of the right to be *762 free of the employer's control during the meal period.' Murphy v. Kenneth Cole Prods., Inc., 40 Cal.4th 1094, 1104, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007). It is an employer's obligation to ensure that its employees are free from its control for thirty minutes, not to ensure that the employees do any particular thing during that time. Indeed, in characterizing violations of California meal period obligations in Murphy, the California Supreme Court repeatedly described it as an obligation not to force employees to work through breaks. [Citation.]" (Brown v. Federal Express Corp. (C.D.Cal. 2008) 249 F.R.D. 580, 585, fn. omitted.)
(7) Consistent with the purpose of requiring employers to provide employees with meal breaks, the Labor Code and the IWC use mandatory language (e.g., Lab. Code, § 226.7, subd. (a) ["No employer shall require any employee to work during any meal or rest period . . . ."]) precluding employers from pressuring employees to skip breaks, declining to schedule breaks, or establishing a work environment discouraging or preventing employees from taking such breaks. The mandatory language does not mean employers must ensure employees take meal breaks. Our interpretation of the meal break requirement is supported by the definition of the word "provide" as used in Labor Code sections 226.7, subdivision (b), and 512, subdivision (a), as well as California Code of Regulations, title 8, section 11050, subdivisions 11 and 12. (See fns. 4 & 5, ante.) "Provide" means "to supply or make available." (Webster's 9th Collegiate Dict. (1986) p. 948.)
Hernandez relies on Cicairos v. Summit Logistics, Inc., supra, 133 Cal.App.4th 949 (Cicairos) to argue employers must ensure meal breaks are taken. In Cicairos, an employer did not schedule meal breaks for its truck driver employees, established a system whereby drivers were pressured to make a certain number of trips during a workday, had a monitoring system to track drivers, and did not include a code for rest stops in its computer system. (Id. at p. 962.) These and other aspects of the work environment effectively deprived drivers of an opportunity to take breaks. In reversing a summary judgment granted to the employer with regard to meal break claims, the appellate court relied upon a January 28, 2002 opinion letter from the Division of Labor Standards Enforcement (DLSE). Cicairos stated, "Under the facts presented . . . the [employer's] obligation to provide the plaintiffs with an adequate meal period is not satisfied by assuming that the meal periods were taken, because employers have `an affirmative obligation to ensure that workers are actually relieved of all duty.' (Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.01.28 (Jan. 28, 2002) p. 1.)" (Cicairos, supra, at pp. 962-963.) With regard to rest breaks, Cicairos held "the [employer] could . . . be liable if the plaintiffs did not take their full 10-minute rest breaks because, as a practical matter, the defendant did not permit the plaintiffs to take their rest breaks. (See Cal. Code Regs., tit. 8, § 11090, subd. 12(A) [employer must authorize and permit rest period].) . . . *763 [¶] The defendant has not proven it supplied the plaintiffs with their rest periods; therefore, summary judgment was improper." (Cicairos, supra, at p. 963.)[6]
Cicairos does not assist Hernandez. The DLSE has withdrawn the opinion letter upon which Cicairos based its analysis. (Dept. of Industrial Relations, DLSE, Opn. Letter (Oct. 23, 2008) ["Court Rulings on Meal Periods"].) In doing so, the division stated: "Taken together, the language of the statute and the regulation, and the cases interpreting them demonstrates compelling support for the position that employers must provide meal periods to employees but do not have an additional obligation to ensure that such meal periods are actually taken." (Dept. of Industrial Relations, DLSE, Opn. Letter (Oct. 23, 2008) at p. 2.) Further, Cicairos's conclusion relating to meal breaks did not depend upon an "ensure" standard. Rather, the facts in Cicairos were such that the employer's business practices effectively deprived employees of the ability to take meal breaks. (Dept. of Industrial Relations, DLSE, Opn. Letter (Oct. 23, 2008) at p. 5.)
Hernandez's position also is not practical. "Requiring enforcement of meal breaks would place an undue burden on employers whose employees are numerous or who . . . do not appear to remain in contact with the employer during the day. See White v. Starbucks Corp., 497 F.Supp.2d 1080, 1088-89 (N.D.Cal. 2007). It would also create perverse incentives, encouraging employees to violate company meal break policy in order to receive extra compensation under California wage and hour laws. [Citation.]" (Brown v. Federal Express Corp., supra, 249 F.R.D. at p. 585.) Thus, although the Supreme Court has yet to decide the issue, we hold that the trial court used the correct legal analysis with regard to meal breaks.

b. The trial court was not foreclosed from addressing the legal issue.

Citing Linder, supra, 23 Cal.4th 439, Hernandez argues the trial court should not have addressed whether employers must provide meal breaks rather than ensure they be taken because a certification issue is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." (Id. at pp. 439-440; accord, Sav-On Drug Stores, supra, 34 Cal.4th at p. 326.)
(8) However, neither Linder nor other Supreme Court authority forecloses courts from examining a legal issue in addressing certification. "[Linder] said only that a plaintiff need not establish a likelihood of success *764 on the merits in order to obtain class certification. It does not follow that, in determining whether the criteria of Code of Civil Procedure section 382 are met, a trial or appellate court is precluded from considering how various claims and defenses relate and may affect the course of the litigation, considerations that may overlap the case's merits. [Citation.] . . . Linder . . . expressly recognized that `whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses' was an issue that might necessarily be intertwined with the merits of the case, but which a court considering certification necessarily could and should consider. [Citations.]" (Fireside Bank, supra, 40 Cal.4th at pp. 1091-1092; see Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906 [103 Cal.Rptr.2d 320, 15 P.3d 1071] [choice of law issue had to be resolved before certification of nationwide class was addressed as it was key to predominance and manageability]; Walsh v. IKON Office Solutions, Inc. (2007) 148 Cal.App.4th 1440, 1450 [56 Cal.Rptr.3d 534] [affirmative defenses may be considered to defeat certification]; contra, Medrazo v. Honda of North Hollywood (2008) 166 Cal.App.4th 89, 97-98 [82 Cal.Rptr.3d 1].)
Hernandez also points to Jaimez v. Daiohs USA, Inc. (2010) 181 Cal.App.4th 1286 [105 Cal.Rptr.3d 443] (Jaimez) to support his argument that the trial court should not have examined the provide versus ensure legal issue. In Jaimez, Division One of this district reversed the denial of class certification in a case that, like Cicairos, involved employees who were on the road most of the day or at customers' places of business. Jaimez found it unnecessary to decide whether employers need only "provide" meal breaks and not ensure employees take them. (Jaimez, supra, at pp. 1303-1304.) The declarations established there were predominant common factual issues whether the employees missed meal breaks because of the employer's practice of designating delivery schedules and routes that made it impossible for employees to both take their breaks and complete their deliveries on time. (Id. at pp. 1300-1301.) Before 2006, the employer had a practice of deducting 30 minutes per shift for meal breaks even if no break was taken, and after 2006, employees had to sign a manifest indicating they took a meal break, regardless of whether they took the break, in order to get paid. (Id. at p. 1304.) Since the employer's practices presented the predominant common factual issues on the meal and rest break claims, Jaimez did not have to consider whether the employer violated a duty to provide or to ensure breaks. Jaimez does not hold that in every wage and hour case, even those presenting entirely different factual issues, courts may not consider the merits of a legal issue in order to rule on class certification. The trial court appropriately decided the threshold legal issue as it could not otherwise assess whether class treatment was warranted.

*765 3. The trial court did not abuse its discretion in denying certification.

a. There is substantial evidence supporting the trial court's ruling that individual issues predominate.

(9) The declarations and depositions of putative class members showed Chipotle did not have a universal practice with regard to breaks. Some employees declared they always missed meal breaks; some declared they received meal breaks, but not rest breaks; one declared his meal and rest breaks were combined; some did not declare they were denied meal breaks; and others declared their breaks were delayed. Employees declared their meal breaks were interrupted with varying degrees of frequency, as demonstrated by one employee who declared he was frequently denied his first rest break, but always denied his second break. In the 73 declarations provided by Chipotle, employees declared they had always been provided breaks. Hernandez himself admitted that except for one occasion, managers in the Manhattan Beach restaurant always provided him with an opportunity to take his breaks, but managers in the Hawthorne restaurant denied him meal breaks two or three times a week.
The evidence before the trial court suggested that in order to prove Chipotle violated break laws, Hernandez would have to present an analysis restaurant by restaurant, and perhaps supervisor by supervisor. Given the variances in the declarations, Hernandez did not demonstrate a common practice or policy. (E.g., Ali v. U.S.A. Cab Ltd. (2009) 176 Cal.App.4th 1333, 1350 [98 Cal.Rptr.3d 568] ["When variations in proof of harm require individualized evidence, the requisite community of interest is missing and class certification is improper."]; compare with Bufil v. Dollar Financial Group, Inc. (2008) 162 Cal.App.4th 1193 [76 Cal.Rptr.3d 804] [certification appropriate where there were allegations employer had policy of prohibiting certain employees from taking breaks].) Even if Chipotle managers directed when employees could take breaks, there was substantial evidence that Chipotle's supervisory personnel did not uniformly handle breaks. The only evidence of a companywide policy and practice was Chipotle's evidence that it provided employees with meal and rest breaks as required by law.

b. The time records do not demonstrate Hernandez can prove on a classwide basis that Chipotle failed to provide employees with breaks.

Hernandez argues he can prove Chipotle has not provided meal and rest breaks by using employee time records that show employees did not clock in and out for meal and rest breaks. However, there is substantial evidence the time records may be unreliable, because Chipotle paid employees for breaks *766 and, thus, employees lacked an incentive to clock in and out, and many did not do so. Chipotle instructed managers not to correct erroneous time records of meal and rest breaks since Chipotle paid employees for breaks, so there was no benefit gained by such time-record corrections. A trier of fact will have to ascertain if Chipotle employees actually missed breaks, or simply forgot to record them, as well as the reason why employees might have missed breaks or went back to work before completing them. In light of the size of the proposed class, there could be thousands of minitrials to address the factual issues, supporting the trial court's conclusion that class treatment is not superior to individual lawsuits. (Kenny v. Supercuts, Inc. (N.D.Cal. 2008) 252 F.R.D. 641, 646 [class allegations that employer failed to provide meal breaks; disparity in employees' time records showed individual inquiry required].)[7]

c. Hernandez's evidence does not undermine the trial court's ruling.

(10) In the trial court, Hernandez pointed to Professor Kakigi's analysis to suggest certification was appropriate because sampling of testimony and expert analysis would prove the case. (Sav-On Drug Stores, supra, 34 Cal.4th at p. 333 & fn. 6.) The trial court correctly concluded that introducing evidence by the use of a sampling of employee testimony was not manageable. "It is not sufficient . . . simply to mention a procedural tool; the party seeking class certification must explain how the procedure will effectively manage the issues in question. . . ." (Dunbar v. Albertson's, Inc. (2006) 141 Cal.App.4th 1422, 1432 [47 Cal.Rptr.3d 83].)
Professor Kakigi did not show a sampling of testimony would simplify a trial. He found that 92 percent of Chipotle's employees missed at least one meal break. We have already noted there are reasons to doubt whether the time records on which his analysis was based are reliable proof of missed breaks. As the trial court noted, "What percentage of the 92% have innocent explanations? If, for example, 75% of the 92% have innocent explanations *767 for the missed break, it would not be rational to allow each side the same number of `samples' to put forth at trial. The Court must know this percentage in order to determine how many samples to allocate to each party. A census on the 92% of employees is required."
Additionally, Professor Kakigi premised his conclusions on the erroneous legal standard that Chipotle had to ensure employees took breaks. He assumed a break was missed if an employee clocked back in one minute early from a break, without accounting for why that occurred. As a practical matter, employees may have voluntarily chosen to return to work early. There was evidence some employees occasionally forgot to record their breaks and sometimes they recorded breaks inaccurately. Even if the employee records showed an employee did not take a break at all, the reason for that "missed" break must be ascertained, because, for example, if that employee willingly decided to forgo a break, there was no unlawful conduct.
Further, the professor's conclusions did not demonstrate Chipotle had a practice of denying breaks. Professor Kakigi stated that 92 percent of employees missed a break and all restaurants showed missed breaks. However, Professor Kakigi did not demonstrate a pattern or practice of missed breaks, for example, with evidence that missed breaks occurred more frequently at certain times, in specific restaurants, during certain seasons or shifts; nor did he offer any explanation why some employees at the same restaurant had different experiences.

d. There is substantial evidence of conflicts of interest among the putative class members.

The last reason provided by the court to deny certification was that members of the putative class had conflicts of interests. There was substantial evidence that some employees move in and out of supervisory roles with the responsibility to provide meal and rest breaks for themselves and other employees on the shift, without a change of title or other indicia of managerial status. Therefore, some putative class members may accuse other putative class members of violating their meal and rest period rights. The trial court did not abuse its discretion in concluding the likelihood that some class members might testify against other class members demonstrated antagonism of so substantial a degree as to defeat the purpose of class certification. (Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, 472 [174 Cal.Rptr. 515, 629 P.2d 23].)

*768 DISPOSITION
Because there is substantial evidence to support the trial court's discretionary ruling, we affirm the order denying certification. Chipotle is awarded costs on appeal.
Flier, Acting P. J., and O'Connell, J.,[*] concurred.
NOTES
[1] Thus, out of 2,074,451 shifts, 424,341 shifts (or 20.5 percent) did not contain time punches for a meal break of 30 minutes or longer. Of those employee shifts, there were 270,245 workdays that did not contain time punches for a rest break within the first four hours of 10 minutes or longer, for a total of 13 percent.
[2] The two cases presently before the Supreme Court (Brinker Restaurant v. S. C., review granted Oct. 22, 2008, S166350, and Brinkley v. Public Storage, review granted Jan. 14, 2009, S168806) will address the "proper interpretation of California statutes and regulations governing an employer's duty to provide meal and rest breaks to hourly workers."
[3] Labor Code section 512, subdivision (a) states: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." (Italics added.)
[4] California Code of Regulations, title 8, section 11050, subdivision 11 states in pertinent part: "Meal Periods [¶] (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. . . . [¶] (B) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (Italics added.)
[5] California Code of Regulations, title 8, section 11050, subdivision 12 states in part: "Rest Periods [¶] (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages. [¶] (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided." (Italics added.)
[6] Cicairos concerned wage order No. 9-2001 (Cal. Code Regs., tit. 8, § 11090) covering workers in the transportation industry, but the pertinent wage order provisions are materially similar.
[7] Hernandez also argues Chipotle cannot rely upon the inaccuracy of its own records to defeat certification because Chipotle was required to keep accurate records of all meal breaks taken. (Cal. Code Regs., tit. 8, § 11050, subd. 7; Aguiar v. Cintas Corp. No. 2 (2006) 144 Cal.App.4th 121, 134-135 [50 Cal.Rptr.3d 135] [employer who failed to keep accurate records in wage and hour claim class action case had burden of proof where employer permitted employees to work on many contracts and not just one at issue and where required records would have permitted determination of subclasses]; Hernandez v. Mendoza (1988) 199 Cal.App.3d 721 [245 Cal.Rptr. 36] [in non-class-action case, burden of producing evidence shifted to employer where employer falsified records and failed to keep accurate records of work performed].) First, we doubt this argument applies to rest break claims, as employers are not obligated to keep records of rest breaks. (Cal. Code Regs., tit. 8, § 11050, subd. 7.) Further, here there was no evidence Chipotle falsified records or purposefully failed to keep records. Certification of a class is not required simply because an employer's records of meal and rest breaks are not 100 percent accurate.
[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.